### MITCHELL AND WIFE & COXE vs. TUCKER'S.

1. Before the introduction of the common law, the Spanish law prevailed in the territory ceded by France to the United States. And under that law a deed was not necessary to convey land: it could be conveyed by parol.

2. An instrument authorizing a party to relinquish all the grantor's right to certain land to the United States, and to select for his own use other lands in lieu of those thus ceded—under the Spanish law, is equivalent to an absolute conveyance.

3. In actions of ejectment under our statute concerning New Madrid locations, a Court of law has the same powers as a Court of equity with reference to the title.

## APPEAL from Howard Circuit Court.

HAYDEN, *for Appellants, contended:*

1st. To entitle the plaintiffs, as against the defendants, to recover the land in controversy, in the present action, it was sufficient for them to prove either a legal or an equitable title thereto. See Digest 1835, p. 234 §1, 2; see Acts 1839, p. 40.

2d. That the proofs which were offered by plaintiffs, and rejected by the Court, conduced to show in the plaintiffs both a legal and equitable right to the land sued for.

3d. That from the proofs given by the plaintiffs, it appears that defendants are mere intruders and trespassers upon the land, claiming no right thereto, and therefore, it was not, and is not competent for them to question either the regularity or formality of the conveyances, by which the ancestor of the plaintiffs acquired right and title to the land; nor is it competent for them, as intruders, under the circumstances of this case, to show title to the land in a stranger, to defeat the plaintiffs' action. 4th John. 211-12; 5 Littell's Rep. 316-18-19-20-21.

4th. That the Court erred in not setting aside the non-suit, and in refusing to grant the plaintiffs a new trial.

LEONARD, *for Appellees, contended:*

The only real question involved in this record is, whether the paper title offered in evidence, by the plaintiffs, was sufficient in point of law to maintain their action. Leduc's deed of November, 1815, which is an essential link in the plaintiffs' title, does not pass to Bates such title in question, as will maintain ejectment, and was, therefore, properly rejected; and with it fell also Bates' deed to Berry—Coxe and wife's to McDowell, and McDowell's to Coxe.

1st. It is not a valid deed under Lessieur's power of attorney of May, 1815. It is executed in the name of Leduc, the attorney, and is his conveyance, and not the conveyance of his principal. Of course, it can only pass Leduc's title, and not the title of Lessieur, his principal. Combs' case 9 Co. Rep. 76, 77; Frontin vs. Small, 1 Str. 705; Spencer vs. Field, 10 Wend. Rep. 87; Fowler vs. Sheerer, 7 Mas. R. 19; Parmers vs. Respass, 5 Mon. R. 563.

2d. It is inoperative for the present action as a deed passing Leduc's interest in the land, for the reason that Leduc had no such interest as will sustain the action, because:

*Mitchell and wife & Coxe vs. Tucker's.*

*First.* Lessieur's deed of May, 1815, is a mere power of attorney, and does not attempt to pass any interest in the land.

*Second.* If it must be construed a deed conveying a power coupled with an interest, and not a mere naked authority, yet it does not convey such an interest as will maintain the present action.

*Third.* Even with apt words of present conveyance, or of an agreement to convey, it would be void in either aspect, for want of a valuable consideration, either expressed or proved. Mildway, case 1, Co. Rep. 176; Ward vs. Lambert, Cro. Eliz. 394, 4 Cruise's Digest, 173, 178; Saunders on Uses 340; Jackson vs. Alexander, 3 John. Rep. 488; Perry vs. Price, 1 Mo. Rep. 394.

The other documents offered by the plaintiffs, and rejected by the Court, were either irrelevant or incompetent evidence—or if material and competent, were supplied by the other documents, subsequently read by the plaintiff, and so they were not prejudiced by the exclusion of the first.

SCOTT, J., *delivered the opinion of the Court.*

This was an action of ejectment begun by the appellants against the appellees, to recover a tract of land in Howard county. The appellants submitted to a non-suit, and after an unsuccessful motion to set it aside, have brought the cause to this Court.

The possession of the appellees of a part of the disputed premises, was admitted on the trial. They set up no title to the land, but relied on their possession. The appellants, on their part, showed that a tract of land, in New Madrid county, had been confirmed to Firman Lessieur, by a board of commissioners appointed under an act of congress, passed for the purpose of adjusting the land titles in the country ceded by France to the United States, by the treaty of 1803. That Firman Lessieur died prior to the year 1820, and that Raphael Lessieur was his only heir at law. After the passage of the act of 17th Feb., 1815, for the relief of those whose lands, in New Madrid county, had been injured by earthquakes, Firman Lessieur, by an instrument of writing under seal, dated 4th May, 1815, for divers good considerations, authorized and empowered Mary P. Leduc to relinquish all injured lands belonging to him, (among which was the tract, in lieu of which, the premises in controversy were located,) to the United States, and select for his own use other lands, in accordance with the provisions of the last recited act of congress. This deed contained a power of substitution. By a deed, dated 20th November, 1815, Mary P. Leduc conveyed to Edward Bates the aforementioned tract of land, confirmed to F. Lessieur, and appointed Bates the grantor's attorney in fact, and substitutes him as the attorney of his principal, and finally confers upon him all the powers in relation to the lands therein mentioned, which were conveyed to him by Raphael Lessieur's deed. This deed was executed by Leduc, in his own name, and not as attorney for Lessieur.

A certificate of location was afterwards issued to Firman Lessieur, or his legal representatives, in lieu of the tract of land confirmed to F. Lessieur, and which had been injured by earthquakes.

This certificate was conveyed by Bates to Taylor Berry, to whom it was delivered, and by whom it was located, by a deed which is executed in the same manner as the deed from Leduc to him.

On this certificate a patent for the land in controversy, issued to F. Lessieur, or his legal representatives, dated 3d July, 1820.

The appellants deduce a regular title from Berry, the alienee of Bates.

From the foregoing facts, the questions arise, whether the instrument executed by Raphael Lessieur to Leduc was effectual as a conveyance, or, if not so, then whether the conveyance by Leduc to Bates could be made so?

All the objections made to the efficiency of the instrument from Lessieur to Leduc, as a conveyance, are predicated upon the common law. By reference to the date of the instrument, it will be seen it was executed on the 4th May, 1815, a period prior in point of time to the introduction of the common law in this State. Before the introduction of that law, the Spanish law prevailed in all the country west of the Mississippi, ceded by France to the United States by the treaty of 1803, unless where it had been altered expressly or impliedly, by the legislation of congress or of the States or territories composed of the ceded domain. By the Spanish law, which prevailed here prior to the introduction of the common law, land might have been aliened by parol. This is well settled. So in the civil law, which is the foundation of the Spanish system of laws, no verbal solemnities were required to give validity to a contract. All that was required, was the apprehension and consent of each party, expressed in any form of words. Justin Lib. 3, title 26.

After the passage of the act of 17th Feb., 1815, for the relief of those inhabitants in the territory of Missouri, whose lands had been injured by earthquakes, two modes of alienation were adopted by those who held injured lands. One was to convey the land injured directly to the purchasers, the other was that employed by the parties to the instrument now under consideration, viz: a power of attorney authorizing the purchaser to select lands for his own use, in lieu of those injured, and an authority to him to relinquish to the United States all right of the vendor to the injured lands. It is difficult for one unfettered by technical rules, to say that such an instrument was intended to have any other effect than a conveyance. It is surely a power coupled with an interest. If such was its design, I know of nothing in the Spanish law which will prohibit this

Court from so regarding it. As to the matter of a consideration, we do not suppose that to an actual conveyance, any more than to a gift, a consideration is necessary. The construction put upon the statute of uses, 27th Hen. 8th, requires a valuable consideration to make effectual a deed of bargain and sale; but for the reasons above given, we do not consider this question at all under the influence of that statute. If this view of the subject obtains, then the instrument executed by Raphael Lessieur to Leduc, was an actual conveyance, or power coupled with an interest, which would enable the attorney to convey in his own name.

But if this question is considered under our own law, in connexion with the statute of Feb. 11th, 1839, entitled, "an act to amend an act regulating the action of ejectment," it might be questionable whether the appellants are not entitled to recover. The object of that statute was to enable litigants, respecting New Madrid claims, to settle their controversies finally in Courts of law, without recourse to a Court of equitable jurisdiction; or in other words, in actions wherein the right to a New Madrid location is involved, the jurisdictions of a Court of law and equity are blended, and that justice is administered in a Court of law, which, in other cases, would be obtained only in a Court of equity. This being the object of the statute, it cannot be evaded by a party who holds possession of the land and claiming no title himself, merely impeaches that of his adversary. To give effect to the statute, we must consider him as asserting the better title, which he shows to be outstanding, and treat the case accordingly. If those in whom the better title exists were parties, and equity could give relief, the statute would be evaded, if one in possession, defending himself on that title, should not be considered as asserting it. There is no injustice in this to those in whom the outstanding title is really vested. They being no parties to the suit, their rights cannot be affected by it. The appellees assert no right in themselves to the land. They merely object that the title of those who would eject them is defective. If those in whom that outstanding title exists were parties to this suit, and the appellants could shew that, as against them, it was no defence to make the statute commensurate with the evil it was designed to remedy, we must regard those objecting an outstanding title, as asserting it in themselves. If the deed from Lessieur to Leduc be considered as a mere power, and Leduc, in the execution of that power, has committed a mistake, it is one which a Court of equity will correct. The proposition just stated has undergone examination in the Courts, and it has been maintained that it is within the province of a Court of equity to relieve against such a mistake. Judge Tucker says, "that though a deed

be executed by the attorney informally, so that it will not pass the legal title, or enable the grantee to sue the principal at law, yet if he has not exceeded his authority, it would bind the principal in equity as a contract; and would, in the case of land, doubtless give an equitable title," 1 Com. 89; see Parmer vs. Respass, 5 Mon. 567. So Judge Story says, "if a person be authorized by a power of attorney to make a release, and he draws and executes the same in his own name, it will not bind his principal, or be the release of the latter. A Court of equity might, indeed, if the release were for valuable consideration, compel the principal to make a release in his own name, or compel the agent to execute a proper release, or grant other relief adapted to the circumstances." Story on Agency, §148.

The only objection to this view of the subject is, that it does not appear that the deed, from Lessieur to Leduc, was for a valuable consideration, consequently, as against Lessieur, the appellants would be regarded as volunteers, and would therefore be denied relief in equity. Whether the words, "for divers good considerations," would import a valuable consideration, in the Spanish law, we are not informed. Their import in our law is well understood, and such effect is not given to them. So it might be questioned how far the appellees, being, according to their own showing, mere intruders, would be allowed to object the want of consideration as between Lessieur and the appellants.

It is clear that as against the appellees the appellants are not entitled to recover, unless they could recover against Lessieur himself; yet, in cases of this character, would not the ends of justice be subserved, by regarding Lessieur as acquiescing in, and acknowledging the justice of the claim of the appellants?

The other Judges concurring, the judgment will be reversed, and the cause remanded.