### JOHNSON vs. McGRUDER.

1. Although a title bond be executed by an agent in such manner as to prevent its operating at law, as the agreement of the principal, yet, in equity, it would be regarded as a sufficient note or memorandum to defeat a bar to its specific performance, founded on the statute of frauds, it appearing that the agent was authorised and intended to bind his principal, (10 Mo. Rep. 264.)

2. The payment of the purchase money, the delivery of possession, and the making of valuable improvements, entitles the grantee to the specific performance of a contract for the conveyance of real estate.

3. In general, an authority to sell and convey lands for cash, confers on the attorney the right to receive the purchase money.

4. A verbal authority to an agent to make a contract relative to the sale of lands, is valid, and not within the statute of frauds.

5. An answer in chancery, although directly responsive to a fact stated in the bill, and denying its truth, may be overthrown by the evidence of one witness, and corroborative evidence.

## APPEAL from Moniteau Circuit Court.

EDWARDS, for appellant.

The plaintiff and appellant insists that there are three positions, under either of which he is entitled to a specific performance of his contract with the defendant, and a reversal of the judgment of the court below.

First, That Gamer was duly authorised as his, McGruder's agent, to sell said land, and as such agent did sell the same to complainant. First then as to the appointment of the agent.

It is not necessary that the appointment of an agent to sell real estate should be in writing. A parol appointment is sufficient: See Clinan vs. Coke, 1 Schoales and Lefroy, 22; Coles vs. Trecothwick; 9 Vesey, jr., 250; Story on agency 50; also from 46 to 57 inclusive; 1 Gr. Ev. 269; Story on agency 154; 2nd Kent 612-13-14.

Second, An agent may do all things touching the subject matter of his agency which the principal could do, unless the contrary manifestly appears: Story on agency, secs. 57, 60, 85, 97, 160, note a; 2 Kent 617.

If Gamer sold said land as stated in the bill, and informed McGruder of such sale, and he did not disavow the sale in a reasonable time, after notice of the sale, then he, McGruder, is bound by the act of Gamer: 14 Serg. and Rawl. 27; 12 Johnson, 300; 1 John's cases in Chancery, 110; 1 Ves. 509.

The next question is, if Gamer was appointed by McGruder his agent for the sale of said land and as such agent did sell as stated in the bill, is the instrument of writing, signed by Gamer, and marked as exhibit No. 1, such a memorandum as will take the case out of the statute?

It is contended by the appellant, that if the language used by Gamer is not such as clearly to charge him alone, and it can be ascertained by said instrument that Gamer intended to act for

Johnson vs. McGruder.

McGruder, then McGruder will be bound: New England Insurance Company vs. De Wolff, 8th Pickering 566.

It is only in cases of deeds that the name of the principal must be signed by the agent: Story on agency, S. 154. It is sufficient if all the contract can be clearly made out from all the writings of the party: 1 Gr. Ev. S. 268.

Although the writing signed by Gamer, evidencing the sale of said land, is not such a memorandum as is required by the statute of frauds, the sale of said land by Gamer, as the admitted and recognised agent of the defendant—the possession of the land by Kelly and his family, for whose use said land was purchased, for a number of years, the payment of the purchase money to Gamer as the agent of McGruder; the receipt of a part of the purchase money by McGruder, and also, the improvements made on the land by Kelly and his family, are such a part performance as will take the case out of the statute of frauds: Sugden on Vendors, and top pages 133, 135, 136, 153.

HAYDEN, for respondant.

1. The contract for the sale of the land, as set out in the bill, does not appear from the statements therein, to have been made by defendant, McGruder, personally, or by his authorised agent binding him to convey the land as therein prayed for; but, on the contrary, the same purports to be the personal and individual contract of Gamer himself.

2. The contract, if construed to have been intended by Gamer and Johnson as the contract of McGruder, was made without any legal authority from McGruder to make the same, and it is therefore not binding upon him. See secs. 1 and 4, Title Frauds and Perjuries, pages 529, 530, Digest 1845, Title Conveyances, 226.

3. The answers of the defendant deny the authority of Gamer to sell the land and receive the purchase money therefor as his agent, and show that the only agency given by him to Gamer was to negotiate a sale, and for the purchase money to be paid to Thomas McGruder by the purchaser; and the proofs in the cause corroborate the answer instead of negativing them.

SCOTT, J., delivered the opinion of the court.

This is a bill in chancery, filed by the appellant, as trustee for the wife and children of W. J. Kelly, against the appellee for relief. It is substantially alleged, that about the 1st of February, 1846, (it should be 1838) the appellant purchased from one W. S. Gamer, as agent for the appellee, several parcels of land, containing in the aggregate 160 acres for the sum of $325. That at the time of the sale, the said Gamer, as agent, executed and delivered to the appellant a writing obligatory, reciting the contract aforesaid, and thereby bound himself as agent for the appellee to convey to the appellant, or cause to be made unto him a deed for the premises sold whenever thereunto requested. That by the said writing obligatory it was stipulated that W. J. Kelly, above named, the husband and father of the cestui-que-trusts, above mentioned, would pay within twelve days from the execution of the said writing the sum of $260, which was accordingly done. That Gamer, the agent, immediately put the cestui-que-trusts in possession

of the lands sold, who have continued thereon until the present time. That the said appellee, McGruder, publicly .represented that the said Gamer was his agent and was authorized to dispose of the premises in .controversy. That about the 20th of April succeeding the sale, the said appellee wrote a letter to his said agent, approving the disposition that had been made of the land, and afterwards received a part of the purchase money. That in November, 1842, he obtained a judgment at law against the said W. J. Kelly, the tenant in possession of the premises in dispute. That the agent, Gamer, has since departed this life, and P. Wilson and Adelia Gamer, wife of the said agent, have taken upon themselves the burden of administration on his estate. A prayer is then made for a specific performance of the contract above set forth.

A demurrer to the bill was overruled, and thereupon the appellee filed his answer thereto, in which it is substantially alleged that the appellant purchased of W. S. Gamer the land mentioned in the bill for the consideration therein expressed, that Gamer executed the writing and paid the money as is charged in the bill. That he was in the year 1837, and is now the owner of the land in controversy, and being a resident of Kentucky, and about to return thither, he requested Gamer to prevent trespasses on his land who consented to do so, and then enquired of the appellee if he would sell it, to which he replied that he would take for it the sum of $300, in cash, and that he, Gamer, or his brother Thos. McGruder, of Howard county, might negotiate the sale, with the understanding that the purchase money should be paid to his said brother. That Gamer might refer any person wishing to purchase to his brother, or he might sell himself, sending the purchaser to his brother to receive the purchase money. That the foregoing is the only conversation he ever had with Gamer, touching the sale of his land, and furnishes the only authority with which he was clothed to act in his behalf in regard thereto. That he never represented that the said Gamer was his agent, otherwise than is above stated. That he returned to Kentucky in the fall of 1837, and was not in Missouri again until 1840, and never saw Gamer after the above recited conversation in 1837. That in the spring of the year, 1838, he received a letter, purporting to be written by Gamer, which stated that he had negotiated a sale of the land to W. J. Kelly for the sum of $325, and that the money was ready to be paid to his brother Thomas, so soon as a deed should be sent out. This letter is now lost or mislaid. That some time in the month of April, 1838, he wrote a reply to Gamer (the only letter he ever wrote to him) in which he expressed his satisfaction with what Gamer represented he had done, and at the same time informed his brother, by letter, what

Johnson vs. McGruder.

had been done and enclosed to him a deed which was to be delivered on the payment of the purchase money. That in the fall of 1838 his brother was on a visit to Kentucky, and whilst there, handed to him the sum of $25, saying it was paid to him by Pleasant Wilson as a part of the purchase money of the land. That the said sum is all that he has received, and that he would not have taken it unless he had believed that the balance would have been paid in a short time.

The possession of the land by Wm. J. Kelly and his family, from the year 1838, is admitted by the appellee, though he professes to be ignorant of the person by whom it was given.

An amended answer insists on the statute of frauds and perjuries as a bar to the relief sought by the bill.

On replication being filed the cause was set for hearing.

On the trial, a witness testified that in 1837 or 8, he heard the appellee authorize Gamer to sell the land for the sum of $300, and to loan out the money, which Gamer consented to do. That the land was sold accordingly, and Kelly's family put in immediate possession thereof and has remained upon it ever since.

The execution of the title bond given by Gamer having been proved, it was read in evidence. The bond was executed by Gamer in his own name, although, from its contents, it appeared that he was acting as agent for the appellee. It recited that Gamer had sold the land to Johnson for the sum of $325. the receipt of which was acknowledged, and bound him as agent for the appellee to convey the land or cause it to be conveyed with a deed of warranty. A condition was endorsed on the bond that it should be void unless the sum of $260, should be paid in twelve days. A receipt for that sum was endorsed, dated 5th of February, 1838. The bond was dated the 2d of February, 1838.

The portion of the letter from the appellee to Gamer, in relation to the sale of the land was read, which is in these words. "This the 19th of April, 1838. Mr Walter Gamer, I received your letter about the 1st of April and you wrote to me that you had sold my land and you want me to send a deed to the land, which I will do in the course of 3 or 4 weeks. I am very well satisfied with the sale. I will send a deed to my brother Thomas and want him to receive my money. My reason for his receiving it, I want him to pay to brother Owen $100, which my father will repay to me again, &c."

Pleasant Wilson, one of the administrators of Walter Gamer, testified that he found among his papers two notes which were given for the money loaned out for the appellee, which he declined taking unless they were endorsed, which he refused to do.

Johnson vs. McGruder.

It was proved that the yearly value of the land was $40. That Kelly's family had built a good hewed log house upon it; had put up out buildings, cleared some land and erected fences.

The court below decreed that the appellee refund to the appellant the sum of $25, and denied a specific performance of the contrct as pray-. ed for, from which decree this appeal was taken.

As to the title bond set out in the bill, although it was executed in such manner as to prevent its operating at law as the agreement of Magruder, yet, in equity it would be regarded as a sufficient note or memorandum to defeat a bar to its specific performance founded on the statute of frauds, it appearing that the agent was authorized and intended to bind his principal. 10 Mo. Rep. 264. 11 Ohio, 223.

But without resorting to the contract in writing set up in the complainants bill as one of the grounds on which a specific performance of the contract should be decreed, we are of the opinion that the facts in evidence, establishing the payment of the purchase money; the delivery of possession and the making of valuable improvements, will entitle the complainant to the relief sought by his bill. The answer asserts, that the sole authority of the agent was to negotiate the contract of sale, and maintains that by the direction of the defendant, the purchase money was to be paid to his brother in Howard county. In relation to this fact, the answer is in direct conflict with the evidence of the witness examined in the cause, who testified that the agent was authorized to sell the land and loan out the purchase money. As the money could not have been loaned out without first receiving it, an authority to loan implied an assent to its receipt.

In general, an authority to sell and convey lands for cash, confers on the attorney the right to receive the purchase money. Peck vs. Herriott, 6 Ser. & Rawl. 149. So it has been held that an authority to make contracts for the sale of lands, will authorize the agent to receive so much of the purchase money as is to be paid in hand on the sale, as an incident to the power to sell. Yerby vs. Grisby, 9 Leigh. But it has been maintained that an agent employed to contract for the sale of an estate, has no authority as such to receive payment of the purchase money, though an auctioneer may receive the deposite paid down as earnest.

This case will not involve the implied powers of an agent, employed to make a contract for the sale of land, as there is evidence of an express authority which clearly implied the power to receive the purchase money. The delegation of the authority to the agent, to make the contract, was by parol, and its existence is sustained by the evidence of a

single witness.  But it will not be questioned, that a verbal authority to an agent to make a contract relative to the sale of lands is valid and not within the statute of frauds, and that an answer, although directly responsive to a fact stated in the bill and denying its truth, can be overthrown by the evidence of one witness and corroborative evidence. There is no doubt, from the pleadings in the cause, that there was power in the agent to negotiate the sale.  The only difficulty arises with respect to his authority to receive the purchase money, as an authority to receive it entire would incidentally confer the right to deliver the possession to the vendee.  The positive evidence of the witness establishing the agency is sufficient to overturn the answer of the defendant, it being fortified by the facts of the receipt of $25, of the purchase money from his brother, a considerable time after the sale without objection, and when we must presume he was acquainted with every thing that had been done, as he received the money from that brother to whom the whole of it, according to his showing, should have been paid; and his willingness to receive the notes for the purchase money which had been loaned out, if endorsed by the administrator of Gamer.  The letter of the defendant in answer to that written by the agent, although the communication which prompted it does not appear, is not in conflict with this view of the subject;  That letter fully ratifies what had been done by the agent.  As the contract was made on the 2d of February, 1838, and as the purchase money was to be paid within twelve days thereafter, the desire expressed in the letter of the defendant of the 19th of April, 1838, that his brother should receive the purchase money, does not disprove the assumption that the agent was authorized to loan it out.  Such a request does not negative the fact that a previous direction had been given to loan out the money.  The money might have been put out by the agent prior to the receipt of the letter of the defendant as he was authorized to do, and as a considerable length of time elapsed from the payment of the purchase money until the receipt of the defendant's letter.

On the ground on which this case is put it will steer clear of the statute of frauds.  This court has repeatedly held that payment of the purchase money, delivery of possession and making valuable improvements will avoid the plea of the statute of frauds.  Otherwise an enactment made to restrain fraud would become an engine to facilitate its perpetration, as nothing could be more fraudulent than to entice a person, under a verbal contract of sale, to enter on the land promised to be sold; to pay the purchase money and make valuable improvements,

and afterwards to refuse a conveyance and turn him out of possession under the plea that the contract was not in writing.

The defendant, in his answer, admitted the letter read in evidence to have been written by him.

This may be a hard case on both parties, but there is nothing in the transaction which casts the least suspicion on the good faith of the complainant and those on whose behalf he was acting. There is no circumstance which excites the least mistrust of any collusion between them and the agent. A full price has been paid for the land—valuable improvements have been made thereon, and now to deprive the wife and children of Kelly of their money and labor for the benefit of one who employed the agent, by whose conduct this controversy has been engendered, would be exceedingly oppressive. As one or the other of the parties must suffer, we are of the opinion that the circumstances warrant us in leaving the loss on his shoulders who first introduced the agent into this transaction.

The decree of the circuir court is therefore reversed, and this court proceeding to give such decree as should have been given below, doth order, adjudge and decree that the title to the southwest quarter of the southeast quarter, the east half of the southwest quarter, and the northwest quarter of the southwest quarter of section twenty-five of township forty-five of range fifteen, west of the fifth principal meridian, all in Moniteau county, in the State of Missouri, do vest in the complainant and appellant, David W. Johnson, and his heirs and assigns forever, in trust for the wife and children of William J. Kelly, and that the said complainant recover his costs and charges in this behalf expended.

Judge Ryland concurring; Judge Gamble absent.