## JOHN HUFFMAN V. AMANDA CARTWRIGHT.

1. EVIDENCE.—An instrument, though not valid by reason of the want of authority in the agent who executed it, is admissible in evidence in a suit against the agent or his heirs to establish as against them the truth of its recitations.

2. AGENT TO SELL LAND.—Written authority is not necessary to enable an agent to bind his principal in an executory contract for the sale of land.

3. PARTITION—ESTOPPEL.—If one entitled to a locative interest of one-third in a tract of land verbally agrees with another that he shall appropriate a particular portion of the survey in satisfaction of his claim, this as between the parties amounts to a parol partition of the land, and its validity cannot be afterwards objected to by the assumed owner of the two-thirds, who afterwards acquires title, on the ground that when the agreement was made he had no title.

4. PARTIES.—All persons whose interests are to be affected by a decree to compel a conveyance of land alleged to be held in trust are necessary parties to the suit.

ERROR from San Augustine.    Tried below before the Hon. M. Priest.

*Stephen Reeves,* for plaintiff in error, cited Tarpley *v.* Poage, 2 Tex., 139 ; Long *v.* Steiger, 8 Tex., 460 ; 13 Tex., 108 ; Hamilton *v.* Rice, 15 Tex., 387 ; Thomas *v.* Chance, 11 Tex., 637, 638 ; 20 Tex., 648 ; Bailey *v.* Mills, 27 Tex., 434 ; Chamblee *v.* Tarbox, 27 Tex., 146.

*F. B. Sexton*, also for plaintiff in error, cited James *v.* Fulcrod, 5 Tex., 516, 517 ; Watkins *v.* Gilkerson, 10 Tex., 343 ; Evans *v.* Hardeman, 15 Tex., 482 ; Neill *v.* Reese, 13 Tex., 187 ; 17 Tex., 514 ; Luter *v.* Rose, 20 Tex., 648 ; Story on Agency, secs. 127, 128.

No briefs for defendant in error have reached the hands of the reporters.

GOULD, ASSOCIATE JUSTICE.—The plaintiff in error brought this suit against Amanda Cartwright, who, under the act of 1856, managed and controlled the community estate of herself and her deceased husband without administration.   The object of the suit was to procure title to two tracts of land, the ostensible legal title to which was in said community estate. Copies of two title bonds, bearing date in May and October, 1855, signed by one B. N. Hampton, and purporting on their face to be made by Hampton to plaintiff Huffman, are made part of the petition.   The original petition alleged that these bonds were made whilst Hampton was the agent of Matthew Cartwright, authorized to sell as well as to locate lands ; that these sales were ratified and approved by Cartwright, and that he and his estate were bound thereby.   Taken together these averments amount to an allegation that the bonds are really the bonds of Matthew Cartwright.

There are, however, other allegations, both in the original and an amended petition, to the effect that Hampton, under a location contract with Cartwright, had a locative interest of an undivided third in two surveys, one in the name of James Bolin, the other in the name of John W. Cox, embracing the two tracts sued for in this case ; that with Cartwright's authority, approbation, and consent, Hampton sold the land in controversy to Huffman, as part of his locative interest, for the purpose of raising money to defray the expenses of location, and that Huffman paid to Hampton a part of the purchase-money in Cartwright's

presence and with his approval.   It was averred that Cart-
wright held the Bolin and Cox certificates to locate for the
owners, and employed Hampton to locate them for an in-
terest of one-third, and that after the sale or contract evi-
denced by the bonds had been made with Cartwright's
approval, he, Cartwright, procured a conveyance from the
holders of the legal title to himself, and it was claimed that
he held this legal title in trust for, and for the benefit of the
plaintiff.   In this aspect of the case the bonds are treated
as binding Hampton, and as conveying to plaintiff Ham-
ton's right to the land described.

The court overruled a general exception to the petition,
and the case was submitted to a jury on pleadings by the
defendant, which it is not necessary to notice further than
to say that they embraced a general denial.   There was a
verdict and judgment for the defendant.

The first assignment is the exclusion from the jury of a
certain instrument in writing, purporting to have been ex-
ecuted August 23, 1859, by one Vansickle, administrator
of Hampton's estate, and by Blount, (one of the owners of
the two certificates,) per M. Cartwright.

Blount testified that Cartwright had no authority to sign
such an instrument for him.   It was offered not as a valid
instrument, but as an admission written and signed by
Cartwright, that Hampton's locative interest in the two sur-
veys had not been at that time adjusted or conveyed, and
the objection was that it was irrelevant.   The instrument
recited a contract of purchase by Hampton in his lifetime
from Blount of the entire Cox and Bolin surveys ; the for-
feiture in part of this contract in Hampton's lifetime, and
agrees to a rescission of the same, and on behalf of Blount
agrees, " in satisfaction of the balance of the locative in-
terest of said Hampton in said land," " to execute and de-
liver to said Vansickle, administrator as aforesaid, a good
and sufficient title to the 640 acres of said land heretofore
contracted to be sold by said Hampton to one Francis Dar-

rel,'' proceeding to state that this conveyance was to be in full of the balance of the locative interest of Hampton in said land.    The paper certainly tends to throw light on the condition of matters as between Hampton, Blount, and Cartwright, and to show that Cartwright admitted something due to Hampton in his locative contract.

Under either aspect of the plaintiff's pleadings the establishment as against Cartwright of Hampton's authority to locate and of the justness of Hampton's claim to a locative interest, cannot be said to be immaterial; and as tending to do this, and to show that Cartwright admitted something due on that interest after Hampton's death, we think the paper should have been admitted, and that its exclusion entitles plaintiff to another trial.    The court charged the jury that these bonds, being the bonds of Hampton in his own right on their face, in order to charge Cartwright as principal in the bonds, Hampton's authority must be in writing, adding that the act of Hampton may be afterwards ratified by Cartwright so as to bind him.

Written authority is not necessary to enable an agent to bind his principal in an executory contract for the sale of lands.    (See also Brock *v.* Jones, 8 Tex., 78; Dawson *v.* Miller, 20 Tex., 171; Brown on Stat. of Frauds, sec. 370*a*; Bingham on Sale of Real Prop., 563, 567, and references; 19 Pick., 505; 15 Mo., 365.)

The charge of the court is then erroneous, unless the fact stated by the judge that the bonds on their face appear to be the bonds of Hampton individually, varies the rule. Nothing whatever is to be found in the contents of these bonds or in the manner of their execution to indicate that Hampton was acting for any one else than himself.    Can Cartwright's estate be bound by such an instrument?    The case of Rogers *v.* Bracken, 15 Tex., 564, holds that such a title bond may be enforced against the principal, although not named or alluded to, but it is to be observed that the agent in that case acted under a full power of attorney,

duly recorded, and the court say that the purchaser will be presumed to purchase under the influence of this record notice. Without any intention of questioning the authority of the case just cited, it is proper to remark that it does not extend to a case where the agent acted without written and recorded authority. The general rule is believed to be that the intention to bind some one else than the party signing the instrument must appear from the instrument signed. (See Bingham on Sale of Real Prop., 483, 522, 562, and references.)

This question, however, has not been discussed by counsel for plaintiff in error, and as we have not had the benefit of any brief (on this or any other of the points involved) from the defendant in error, it is not intended to do more than to invite its thorough examination, should it arise on another trial. It is to be remarked that the plaintiff claims to have established the existence and loss of written authority from Cartwright to Huffman, and in what has been said we have not intended to intimate any opinion as to the sufficiency of the evidence to support this claim. It may also have some significance if Hampton had himself a locative interest to which his individual bond may have well applied.

The court further instructed the jury, in substance, that if Hampton, as locator, was entitled to an undivided third of the surveys he could not sell any particular part of the surveys without the consent of the other joint owners; nor could Cartwright authorize or ratify such sale unless he was at the time a joint owner with Hampton of the entire tracts; and a party so purchasing took no title as against the other joint owners. On the part of the plaintiff various charges were asked embodying in different forms the proposition that if the owners of the certificates had received their interest of two-thirds in other portions of the survey, then the sale by Hampton, if made with Cartwright's assent, would be valid; and that if Cartwright afterwards procured from the owners of the certificates a conveyance to himself of land,

including that sold by Hampton, the consideration being either in whole or in part the location of these lands, that he would hold in trust for Hampton's vendee. Blount testified to the receipt of two-thirds of the surveys, and also that the consideration of a conveyance made by him to Cartwright in October, 1860, was in part Cartwright's locative interest. Under the evidence, if Huffman could claim all of Hampton's rights, the court erred in refusing the instruction asked and in giving the charge just stated. If Cartwright was bound to Hampton that he should get his locative third, and assented to his appropriation of a particular part of the survey, this, as between them, would amount to a parol partition, and Cartwright cannot object to its validity that he at the time had no title himself. Those who then held the title were not bound, but their subsequent conveyance to Cartwright would only put it in his power to discharge his obligation to Hampton under their contract, and would give him no right to disaffirm the partition.

We are, however, of the opinion that the title bonds do not entitle Huffman to maintain this suit in the character of Hampton's vendee or assignee; at all events not without making Hampton's representatives parties. The title bonds do not show an absolute sale of the land, or an absolute transfer by Hampton of a part of his locative interest; but they do show that in each case only a part of the purchase-money was paid, and that Huffman is not entitled to the land until the balance of the purchase-money is paid. In fact the plaintiff in his petition only claims to have paid the part recited in the bonds, and proffers to pay the balance, not to Hampton's representatives, who are not parties, but to the defendant, Amanda Cartwright. The case of Allison *v.* Shilling, 27 Tex., 453, is authority against the maintenance of this suit, treating the bond as Hampton's, without making his representatives parties, even if all the purchase-money were paid. Much more plainly is this ne-

cessary where it affirmatively appears that the plaintiff can only claim title after making further payments to one not a party.

We have deemed it proper to notice these questions in so far as it appeared probable that they might recur.

For the reasons indicated the judgment is reversed and the case remanded.

REVERSED AND REMANDED.

[Chief Justice ROBERTS did not sit in this case.]