JOSEPH WOLFERT, Surviving Partner, etc., Respondent,
v. THE PITTSBURG, CINCINNATI AND ST. LOUIS
RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, March 24, 1891.

**Common Carriers:** BILL OF LADING: ADMISSIBILITY OF PAROL EVI-
DENCE. A bill of lading was issued by a common carrier for live
stock received at Covington, Kentucky, and consigned to East St.
Louis. It recited that the stock was thus consigned, and guaran-
teed that the through rate of freight would not exceed a specified
amount. It was made out on a blank form used for ordinary
merchandise, and was inappropriate for the shipment of live stock.
Among its provisions was one, that the packages received should
be transported "to the company's freight station at ———," and
that the responsibility of the company should cease at that station.
*Held* that the bill of lading was so ambiguous, as to render parol
evidence admissible to establishing an undertaking by the company
to carry the stock through to East St. Louis.

*Appeal from the St. Louis City Circuit Court.*—HON.
JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

*Everett W. Pattison,* for appellant.

(1) If plaintiff places his right to recover on the
ground that the stock was not delivered in a reasonable
time, his proof utterly fails. The contract he himself
introduced in evidence recites that the appellant did
not agree to carry the stock by any particular train, nor
in time for any particular market. He does not show
that it was not carried in a reasonable time. The testi-
mony as to the agreement to carry in thirty hours was
improperly admitted, and should not be considered.
*McFadden v. Railroad,* 92 Mo. 350; *The Delaware,* 14
Wall. 579; *Railroad v. Remmy,* 13 Ind. 518; *Pember-
ton Co. v. Railroad,* 104 Mass. 144; *White v. Ashton,*

51 N. Y. 280 ; *Hewitt v. Railroad*, 63 Iowa, 611 ; *Petrie v. Heller*, 35 Fed. Rep. 310 ; *Higgins v. S. S. Co.*, 3 Blatch. 282. Besides, it is absurd on its face. It was a physical impossibility to run a freight car in thirty hours by the route this car took. ( 2 ) If he seeks to recover on the ground that appellant failed to feed and water the stock his proof equally fails. His agent took upon himself the responsibility of seeing to this. And, furthermore, the stock was not in possession of appellant twenty-eight hours. U. S. R. S., sec. 4386. ( 3 ) While, ordinarily, if a shipper shows delivery to a carrier, it then devolves upon the carrier to account for the property, yet in a case of this nature, where the injury is alleged to have been caused by a failure to feed and water, if plaintiff shows that the stock was in the hands of defendant less than twenty-eight hours, he thereby relieves defendant of the burden of further accounting for the stock. This principle is involved in the decisions of *Gillespie v. Railroad*, 6 Mo. App. 554 ; *Randle v. Railroad*, 65 Mo. 333 ; *Witting v. Railroad*, 28 Mo. App. 112.

*R. S. McDonald* and *M. McKeay*, for respondent.

THOMPSON, J.—This action was brought against the Pittsburg, Cincinnati & St. Louis Railway Company and the Terre Haute & Indianapolis Railway Company to charge them, as joint undertakers, for negligence in transporting a carload of live stock, consisting of eighteen horses and one mule, belonging to the partnership, of which the plaintiff is the surviving partner, from Covington, Kentucky, to East St. Louis, Illinois. On the trial there was a verdict and judgment in favor of the Terre Haute & Indianapolis Railroad Company, and against the Pittsburg, Cincinnati & St. Louis Railway Company. The latter prosecutes this appeal.

The petition charges an undertaking, for a reasonable reward to be paid, on the part of defendant, to

transport the animals from Covington, Kentucky, to East St. Louis, Illinois; that the animals were delivered to the defendants at Covington, Kentucky, in good condition, and were redelivered by them at East St. Louis, Illinois, in an impoverished and damaged condition, whereby four of them died. The negligence charged in the petition consisted of, *first*, unreasonable delay in making the transit; *second*, failing to feed and water the animals *en route*. The answer of the Pittsburg, Cincinnati & St. Louis Railway Company (with which alone we are concerned on this appeal) admitted its incorporation, and that it was a common carrier of live stock for hire, but denied that either of the defendants were owners, lessees or operators of several lines of railroad connecting with each other, and denied that the defendant's line extended to East St. Louis, but averred that Richmond, Indiana, was the station on its line nearest to the city of East St. Louis.

The answer further set forth that, on March 26, 1887, one J. J. Day, claiming to be the agent of Reilly & Wolfert, delivered to it eighteen horses and one mule, which the defendant undertook to carry from Covington, Kentucky, to such station on its line as was nearest to East St. Louis, Illinois, and there to deliver to such company or carrier as could or would carry it forward from said point to East St. Louis; that the contract was in writing, and contained stipulations, that the responsibility of the defendant as a common carrier should cease at the station where the stock was delivered to such other carrier, and that defendant did not agree to carry the stock by any particular train, nor in time for any particular market.

The answer then avers that it received the stock at Covington, at 3:30 o'clock P. M., on March 26, 1887, and carried it by way of Xenia, Ohio, to Richmond, Indiana, which was the point on its route nearest to the city of East St. Louis, the stock reaching said city of Richmond at eleven A. M. the next day, and that

that was a reasonable, proper and usual time in which to carry the stock by its route ; that, after it arrived at Richmond, defendant delivered it promptly and without unnecessary delay, and in good order and condition, to a carrier whose line extended westward from Richmond, and that the stock was then and there accepted by such connecting carrier, and thereby the contract of defendant was wholly terminated, and its liability ceased.

The answer of this defendant further avers that it did provide a suitable car for the stock, and did carry the same properly and safely to Richmond, Indiana ; and it denies that it acted negligently or carelessly in the premises, or that it in any way failed to perform its duties as carrier, or that the stock, or any part thereof, received any damage while in its custody.

As to all the other averments of the petition, the defendant denied any knowledge or information sufficient to form a belief.

The new matter set up in this answer was put in issue by a reply.

At the trial the plaintiff gave evidence tending to show that, on the date named in the pleadings, one Day, acting as agent of the late firm of Reilly & Wolfert, delivered to the agent of the defendant which prosecutes this appeal, at Covington, Kentucky, eighteen horses and one mule, in good condition, for shipment to East St. Louis, Illinois ; that this defendant received the animals for shipment and issued a bill of lading therefor, which bill of lading was put in evidence by the plaintiff. This bill of lading was not appropriate to the shipment of live stock, but it seems to have been filled out upon the printed form of bill of lading, usually employed in the shipment of ordinary merchandise. This bill of lading, so far as it is material to the present controversy, reads as follows :

"Local Bill of Lading.    Contract No...... Pittsburg, Cincinnati and St. Louis Railway Company.

"March, 1887.

"Received of Reilly & Wolfert the following described packages in apparent good order (condition and character of contents and value unknown), consigned as marked and numbered on the margin, to be transported over the line of this railway to the company's freight station at—— and delivered in like order to the consignee or owner at said station, or to such company or carriers (if the same are to be forwarded beyond said station), whose line may be considered a part of the route to the place of destination of said goods or packages; it being distinctly understood that the responsibility of this company as a common carrier shall cease at the station, where such packages are to be delivered to such person or carrier; but it guarantees that the rate of freight for the transportation of said packages from the place of shipment to East St. Louis shall not exceed thirty-five cents per hundred pounds, and charges $37 upon the following conditions:"

Then follow a large number of conditions, applicable only to shipments of general merchandise, after which the instrument proceeds as follows: "This company does not agree to carry the property by any particular train, or in time for any particular market, and is not to be responsible for any loss or damage occurring by the refusal, failure or inability of any connecting line to take the property forward, after twenty-four hours' hinderance of delivery, by having it ready for delivery, and no neglect being shown on the part of this company."

Then follow a number of stipulations applicable to special kinds of merchandise, but none of them applicable to live stock; after which the instrument proceeds thus: "This company is not responsible for accidents or delays from unavoidable causes. The responsibility of this company as a common carrier, under this bill of lading, to commence on the removal of the goods from

the depot in the cars of this company, and to terminate when unloaded from the cars at the place of delivery." Then follow several other stipulations, not material to be considered, after which come the marks, description and weight, thus:

| " Marks and Consignees. | Description of Articles. | Weight, subject to correction. |
|---|---|---|
| Reilly & Wolfert, East St. Louis, Ill. | 1 car, 18 horses and 1 mule, O. R. | 20,000 " |

Next to this, the instrument ends with the signature of " W. A. Peter, Freight Agent."

It is to be observed that the station on the route of the company issuing this bill of lading, at which the goods were to be delivered to the connecting carrier, to be forwarded, etc., is left blank and unfilled in the instrument. It is also perceived that no other destination of the goods is given in the instrument, than that given under the head of " marks and consignees," which is East St. Louis, Illinois. It is also perceived that it guarantees a through rate of freight to East St. Louis at the rate of thirty-five cents per hundred pounds. The weight is stated in the bill of lading (subject to corrections) at twenty thousand pounds. In conformity with this the plaintiff's evidence tended to show, and without contradiction, that Reilly & Wolfert paid the freight at the end of the transit at East St. Louis to the amount of $70. From the use of a printed form of bill of lading inappropriate to shipments of live stock; from the fact of leaving the name of the terminal station unfilled; and from the further fact of guaranteeing a through rate of freight to East St. Louis, the point of final destination named in the bill, we are justified in concluding that the contract was ambiguous upon the point, whether the defendant undertook to carry to its own terminal station, or whether it undertook to carry

through to East St. Louis, in such a sense as warranted the trial court in admitting parol evidence to show what the contract really was.

Against the objection of the defendant such evidence was admitted in the form of a deposition of the defendant's agent, at Covington, Kentucky, through whom the contract was made.

This agent, Mr. McPherson, testified on the subject as follows: "Q. By your agreement with Mr. Day, didn't you agree to carry this stock from Covington, Kentucky, to East Louis? A. Yes, sir.

"Q. By what authority did you agree to carry it over any road other than the Pittsburg, Cincinnati and St. Louis? A. The rate sheet of all of these roads gives us authority to make all these contracts."

The court plainly committed no error in overruling the defendant's objection to this evidence.

It thus appears that there was evidence tending to show a through contract of shipment from Covington, Kentucky, to East St. Louis, Illinois, made by an agent of the defendant having authority to that end. As there was also evidence tending to show an unreasonable delay in the transit, and damage to the animals in consequence of such delay, we must overrule the defendant's assignment of error that the case should not have been submitted to the jury.

This brings us to consider the instructions upon which the case was submitted to the jury, which were given at the request of the plaintiff. The first of these instructions, after certain preliminary matters, which need not be rehearsed, proceeded as follows: "And if the jury further believe from the evidence that, on or about the said twenty-sixth day of March, 1887, said Reilly and Wolfert by their agent, J. J. Day, shipped on board the defendant's car at Covington, Kentucky, eighteen horses and one mule, in good health and condition, to be transported from said Covington, Kentucky, to East St. Louis, Illinois, and that there was no

special contract between the parties in relation to the time of starting the train, or of its arrival in East St. Louis, Illinois, then it was the duty of the defendant to start the train and to make the journey within a reasonable time after so receiving said stock ; and to provide stations or stopping-places along the road where such animals might be fed and watered ; and if the jury further believe from the evidence that the car containing said stock did not arrive at East St. Louis, Illinois, within a reasonable time after the stock was placed on the car, and that the defendant did not provide any stopping place where said animals could be fed and watered along the road, and, by reason of such delay and failure to provide for the feeding and watering of said stock, said animals, or any of them, were injured without the fault of Reilly & Wolfert, or their agents, then you will find for the plaintiff."

The second instruction given at the request of the plaintiff was as follows : "2. If the jury find for plaintiff, they will assess his damages at such sum as they may believe from the evidence said horses, or any of them, were injured by reason of defendant's failure to deliver the same at East St. Louis, Illinois, within a reasonable time, or by reason of the defendant's failure to provide a suitable station or place along the road where such animals might have been fed and watered."

It is perceived that each of these instructions contains the hypothesis of the defendant failing to provide any stopping place along the route, where the animals could be fed and watered. This injected into the case an element of negligence, which was neither alleged in the petition nor presented for consideration by any evidence adduced in the case. The instructions, it is perceived, use the expression, "along the road ;" but this was probably intended to mean, and was doubtless so understood by the jury, along the entire route between Covington and East St. Louis. There not only was no

evidence tending to show that the defendant did not provide suitable places along the route where live stock could be unloaded and fed; but, on the contrary, the evidence adduced by the plaintiff inferentially tended to show that the animals could have been unloaded and fed at Indianapolis, at which point they arrived about twenty-six hours after, starting from Covington. On this point, McPherson, the defendant's agent at Covington, whose deposition was taken and put in evidence by the plaintiff, testified as follows: "State whether or not anything was said in regard to feeding and watering the stock *en route?* A. Yes, sir. It is our custom to ask parties where they want to feed. I asked Mr. Day if he wanted these horses billed to feed at Indianapolis. He replied, no; that he would be there, and, if necessary to have them taken off, he would do so."

The Revised Statutes of the United States, section 4386, prohibit interstate railway companies, carrying live stock, from keeping such animals upon their cars for food and water .for a longer period of time than twenty-eight hours; but that and the following sections require them to unload such animals and feed and water them at least once in twenty-eight hours, under a penalty there named. If the plaintiff had desired to bring his case within this statutory provision, he should have claimed and submitted an apt instruction to that end.

The judgment will be reversed and the cause remanded. All the judges concur.