BANK OF LITCHFIELD v. JAMES K. ELLIOTT and Another.[1]

June 14, 1901.

Nos. 12,583—(144).

## Shipment by Carrier—Presumption of Ownership.

Upon shipment of goods through a carrier to a third party, with the delivery to the shipper of a bill of lading, the consignee is prima facie the owner of the property; but this presumption of ownership may be rebutted by proof of facts showing the actual intent of the shipper at the time the goods were delivered to the carrier.

[1] Reported in 86 N. W. 454.

**Pledge of Bill of Lading to Third Person.**

Evidence in this case considered, and *held*, that where a bill of lading was issued, but retained by the shipper, who hypothecated the same to a third party, after the shipment had been made, the evidence reasonably tends to support the finding of the trial court that it was the intention of the shipper to vest the title of the property in the consignee at the time the same was delivered to the carrier.

**Judgment upon Findings.**

Under the facts found, as to the hypothecation of the bill of lading, after the shipment, for the purpose of securing payment of a draft drawn and cashed in connection therewith, the party who cashed the same acquired no right to the property described in the bill of lading.

Action in the district court of Hennepin county to recover $470 damages for the conversion of a carload of wheat. The case was tried before Brooks, J., who found in favor of defendant. From a judgment entered pursuant to the findings, plaintiff appealed. Affirmed.

*Charles A. Willard, William A. Lancaster,* and *Charles Donnelly,* for appellant.

*Benton & Molyneaux,* for respondents.

LOVELY, J.

Action to recover for a car load of wheat shipped from Litchfield to defendants, upon the claim that the plaintiff bank was entitled to the possession of the wheat, of which it had been deprived by defendants. The cause was tried to the court, who found for defendants. Judgment was entered thereon, from which plaintiff appeals.

One Thompson was a wheat buyer at Litchfield. On May 11, 1900, he had a conversation over the telephone with defendants, who were engaged in the commission business at Minneapolis. This conversation was substantially to the effect that Thompson would forward a car load of wheat to them, but would have to draw for $450, to which defendants assented. At the time of the conversation over the telephone, Thompson stated that he had a car of wheat which he was filling, that he would ship the same to defendants, but must have money to pay for the same, which he procured through the draft. On May 14, Thompson finished loading

the car, and on May 15, shipped it over the Great Northern road, consigned to defendants, receiving a bill of lading therefor in the usual form, with the exception that upon its face were the words, "Not negotiable unless delivery is to be made to the consignee or order." Thompson, on May 16, the day after he received the bill of lading, drew a bill of exchange on the defendants for $1,000, attached the draft to the bill, and presented the same to the plaintiff bank, at Litchfield, for discount; representing to the bank that he was the owner of the wheat described therein. The plaintiff discounted the draft, paid the cash realized thereon to Thompson, and sent the draft forward to Minneapolis for collection, but defendants refused to pay it. Among other things, the trial court found, in substance, that in delivering the wheat to the Great Northern Railway Company, and receiving the bill of lading, Thompson, the shipper, intended to deliver the wheat to defendants, and that the railway company, until the delivery, should hold possession thereof as the agent of defendants, and not otherwise.

The only issue that arises in this case necessary for consideration is whether the facts found by the trial court are supported by the evidence, which is fairly summarized above in essential respects. From the fact that Thompson had received advances from his factor in Minneapolis in payment of the car load of wheat, and had shipped the same to carry out the agreement he made over the telephone, was the court warranted in finding that it was his intent to deliver the same to the defendants, notwithstanding he retained possession of the bill of lading? This was a question of fact, and, under our view, controls the decision of this case. It has been held by this court that, where goods have been shipped to a consignee, there is a presumption that such consignee is the owner of the same, and entitled to the possession thereof. Dyer v. Great Northern Ry. Co., 51 Minn. 345, 53 N. W. 714; Van Dusen & Co. v. Piper, 42 Minn. 43, 43 N. W. 684. In ordinary transactions of the character indicated, the possession or retention of the bill of lading itself alone does not control the question of ownership, yet, in the absence of other proof, it might be prima facie evidence of ownership, and of the right to the pos-

session of the same. Within common knowledge, carriers are in the habit of delivering property to consignees without the production of the bill of lading, but the presumptive evidence of ownership evidenced thereby is open to rebuttal by proof of adverse title.

The real question, after all, is, who is the real owner of the property? and in this case this question depended upon the proof of the intent of the shipper, to be gathered from the facts above stated, existing at the time of the shipment. Freeman v. Kraemer, 63 Minn. 242, 65 N. W. 455. If it does not follow that, because the bill of lading was retained by the shipper when the car load of wheat went forward, such retention by the shipper was no more than an item of proof as to the right of ownership in the property, our duty to adopt the finding of the trial court is clear.

Significance was given on the trial to the evidence tending to show that advances had been made upon the car load of wheat by the defendants while it was being loaded, and hence that the shipment to the consignee was practically a payment for the same. It seems to us that such inference was reasonable, and finds support in the following, among other, cases upon which the learned trial court relied: Ruhl v. Corner, 63 Md. 179; Straus v. Wessel, 30 Oh. St. 211; Davis v. Bradley, 28 Vt. 118.

It is undoubtedly true, as urged by counsel for plaintiff, that numerous business transactions are daily occurring where produce is shipped to factors as consignees who act as the agents of the consignor in the disposition of the property. In such cases bills of lading are delivered to the shipper, and hypothecated to a large extent at banks, which receive them as collateral security and evidences of title to the property. While this custom is of some evidentiary value, it must also be remembered that banks have also in such transactions a very practical method of protecting themselves from fraud; for it is also a common business practice in such transactions to have the consignor ship goods to himself as consignee, which course indicates both ownership of the property and right to possession thereof in him, and would, it seems, better protect the party who may make advances upon bills of

lading than the course adopted in this case, since under such practice the prima facie as well as the real ownership of the property would remain in the shipper. The fact that the shipper did not resort to this course, in this instance, to put it mildly, gave him an opportunity to take an undue advantage of the plaintiff's confidence.

But the only question which we are permitted to consider on this appeal is whether the facts, as above found by the trial court, were supported by evidence, or whether the trial court was required to find, as a matter of law, that the plaintiff, by receiving the bill of lading of the property shipped, upon which money had already been advanced, became the owner thereof when the draft was cashed at the bank.

For the reasons stated, we cannot disturb the finding of the trial court in that respect, and the judgment appealed from is affirmed.