STURGES *v.* DETROIT, GRAND HAVEN & MILWAUKEE
RAILWAY CO.

1. CONSTITUTIONAL LAW — FEDERAL STATUTES — INTERSTATE COMMERCE.

Act of June 29, 1906, chap. 3591, 34 U. S. Stat. 595, U. S. Comp. Stat. Supp. 1909, p. 1166, known as the "initial carriers' act" is constitutional. *Atlantic Coast Line, etc., R. Co.* v. *Riverside Mills*, 219 U. S. 186 (31 Sup. Ct. 164).

2. CARRIERS—CONNECTING CARRIERS—NEGLIGENCE — TROVER AND CONVERSION—FREIGHT.

In an action against several connecting carriers for failure to retain control of freight until the draft attached to the consignor's bill of lading was paid, it is immaterial, under the Federal statutes, which carrier committed the alleged wrong.

3. SAME—PAROL EVIDENCE — WRITTEN CONTRACT — BILL OF LADING.

Prior or contemporaneous oral agreements are not competent to vary the terms of a bill of lading.

4. SAME—BILL OF LADING—DRAFT ATTACHED.

Although a shipper of freight used a white blank, known as the straight form, instead of a yellow blank or order form adopted by carriers for shipments to be delivered only on tender of the bill of lading, where it is sent attached to a sight draft, the consignors sufficiently notified defendants of their intention by marking the bill of lading "B. L. attached to draft," addressing the box to themselves with direction to notify the real consignee, and by informing the initial carrier's agent of the fact that they wanted to send the goods subject to the payment of a draft before delivery.

5. SAME—EVIDENCE.

If the bill of lading is ambiguous as to any element of the contract, parol evidence is admissible to show the actual meaning.

6. SAME.

And for such purpose, the position of the parties, the things said and done by them, and the circumstances surrounding the making of the contract, are competent.

7. SAME.

While the consignee is *prima facie* the owner of the property delivered to the carrier, the presumption may be overcome by facts showing the contrary intent of the owner at the time of consigning the goods for shipment.

8. SAME—AGENTS—CONTRACTS.

The local freight agent was authorized to make a contract in the form adopted by the parties.

Case-made from Wayne; Murfin, J. Submitted April 11, 1911. (Docket No. 81.) Decided June 2, 1911.

Trover and case by Varney K. Sturges and Austin Hale, copartners as the Detroit Leather Works, against the Detroit, Grand Haven & Milwaukee Railway Company and another on a contract of shipment. Judgment for plaintiff against said railway company which brings error. Affirmed.

*L. C. Stanley,* for appellant.

*Henry B. Graves,* for appellees.

STONE, J. This suit was originally commenced against the above-named defendant and the Illinois Central Railroad Company. The case was tried before the court without a jury, and the following findings were made by the circuit judge:

"In fulfillment of an order from the Louisiana Automobile Club, of New Iberia, La., plaintiffs shipped to that point on May 29, 1909, four boxes of merchandise. In transit the goods were carried to Durand, Mich., by the defendant the Detroit, Grand Haven & Milwaukee Railway Company, thence to Chicago, Ill., by the Grand Trunk Western Railway, thence to New Orleans, La., by the defendant Illinois Central Railroad Company, and thence to the point of destination by Morgan's Louisiana & Texas Railroad & Steamship Company. The boxes were numbered consecutively from 1 to 4, and bore the address: 'Detroit Leather Works, New Iberia, Louisiana. Notify Louisiana Automobile Club.' Other than the foregoing, there was no inscription on any of them.

"The boxes were delivered by plaintiff Sturges personally to the defendant Detroit, Grand Haven & Milwaukee Railway Company, at its freight depot in this city. It was his purpose to consign the goods with sight draft attached to bill of lading. The address which he marked upon each of the packages, as the evidence of the defendants establishes, conformed with the usage followed throughout the country by shippers in making similarly conditioned consignments. This method has grown into a custom, recognized by the carriers of the country. When the addressee of a consignment is the consignor, with an appended direction to notify the consignee, such an inscription is interpreted in the transportation world as indicating retention of control in the shipper until some condition, precedent to delivery to the consignee, shall have been fulfilled.

"Sturges had prepared at his office, and took with him to the depot, a bill of lading upon a form furnished by it, and known as the 'straight' bill of lading. He indorsed upon the face of the bill in a conspicuous space and in a legible hand the notation 'B. L. attached to draft,' the abbreviation 'B. L.' under the concession of counsel being intended to mean by plaintiffs and being understood by defendants as meaning 'bill of lading.' This was his first shipment of this character, and, being inexperienced, he consulted the clerk in charge as to the manner of making it. Sturges made known his desire to employ a method by which the goods would be delivered to the consignee only upon the latter's payment of a sight draft, which would be forwarded, attached to the bill of lading. The clerk conferred with a superior, and both informed plaintiff that the shipment was being made in a manner to accomplish that purpose.

"It develops that, when shipments of this character are desired to be made, the form used is that known as the 'order' bill of lading. The 'straight' form is used in forwarding shipments unconditioned as to delivery to the consignee. The 'order' form, in addition to the language of the 'straight' form, contains provisions denoting the special purpose to retain control in the shipper. The two forms also differ in color. These forms were adopted by the defendants upon the recommendation of the interstate commerce commission, that body expressing the view in its recommendation that it had no authority to compel their adoption.

"Plaintiffs' prepared bill was receipted by the clerk referred to, returned by him to Sturges, and forwarded by the latter with sight draft in the sum of $997.90 attached for collection, that being the purchase price of the goods, to the New Iberia National Bank of New Iberia, La. The goods were delivered by the ultimate carrier without surrender of the bill of lading and without payment of the draft. A portion of the shipment was subsequently returned from an unknown source to the plaintiffs, and the bill and draft were returned unpaid to the plaintiffs by the bank. Upon due notice to the defendants, plaintiffs sold the returned goods, realizing therefor $281.30, leaving an unpaid balance of $720.15 due upon the order. It is sought to recover this balance in this action.

"In the declaration trover is joined to an action on the case. Two counts are set forth under the theory of the latter action, the one alleging a breach of duty in the delivery of the goods under the circumstances here related, and the other, in addition to averring such a breach, invoking section 7 of the act of Congress of June 29, 1906, chap. 3591, 34 U. S. Stat. 594, being an act in regulation of commerce, and found upon page 273 of the Federal Statutes Annotated, Supplement of 1909 [U. S. Comp. Stat. Supp. 1909, p. 1166]. That portion of the section relied upon provides—

"'That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State, shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed.'

"Proceeding now to an examination of the legal questions presented, what are the respective contentions of the parties? The plaintiffs claim that a shipment made under the conditions here established may be delivered to the consignee only in the event of the honoring of the accompanying draft, and a surrender of the bill of lading. Under the terms of the Federal statute cited, they assert their right to hold the initial carrier liable for their loss. They have abandoned any theory which would fix liability

upon the other defendant, Illinois Central Railroad Company.

"The defendants insist that the contractual relations of the shipper and carrier are defined in and by the bill of lading exclusively, and that the shipping directions marked upon the boxes, and the parol agreement between defendants' agents and Sturges, cannot be permitted to vary the mutual rights and liabilities created by the bill. If this position be untenable, it is further urged that the bill of lading in question, notwithstanding the notation upon it, was ineffectual, standing by itself, to attain the end intended by plaintiffs. It is contended that it was a 'straight' or unconditioned bill, which placed no limitation as to delivery upon the carrier. The point was also reserved, though not argued, that the Federal act cited is unconstitutional, in that it exceeds the legislative powers of Congress. If regarded as valid, it is said to be inapplicable. Even though a contrary view be taken of the legal character of the bill of lading, yet it is further urged that, the Federal statute being inapplicable, recourse may be had only as against the carrier which made delivery, namely, Morgan's Louisiana & Texas Railroad & Steamship Company. This claim is made upon the conceded theory that, in the absence of statutory liability, the common law affords a remedy for misdelivery only against the carrier immediately responsible therefor, and not against any prior carrier.

"Consideration of the legal character of a bill of lading will clarify the situation presented by the defendants' first proposition.

"A bill of lading has a dual office. It is both a receipt for the goods shipped and a contract to carry and deliver them upon the terms specified in it to the designated consignee.

"It must be obvious that the precise form of bill herein used upon the recommendation of the interstate commerce commission has, because of that fact, no peculiar legal significance. Actual knowledge of these forms and their special purposes is wanting in the plaintiffs, and there is no showing of any custom in their use, in the light of which the parties hereto may be assumed to have acted. Accordingly the bill is to be construed and interpreted as of its own intrinsic provisions. In so far as it embodies the contract of the plaintiffs and defendants for carriage and delivery, it is not susceptible of variation by parol.

Leaving aside a certain incapacity of the carrier to limit its liability, it is competent, however, for the parties to insert in it such stipulations as they mutually elect to include. 6 Cyc. pp. 417, 420, and cases cited; *The Caledonia* [C. C.], 43 Fed. 681; *Bostwick* v. *Railroad Co.,* 55 Barb. [N. Y.] 150.

"Disregarding all extrinsic evidence, what significance, if any, is to be attached to the notation upon the bill given plaintiffs by the receiving carrier? The attaching of a draft to a bill of lading is of itself an expression of intention on the part of the shipper to retain the right of disposition of the goods until payment of the draft. *Wells, Fargo & Co.* v. *Navigation Co.* [C. C.], 32 Fed. 51. Even though, under such circumstances, the purchaser of goods so shipped be named as consignee in the bill, he may not have delivery of the goods until he has paid the draft, nor may the carrier deliver them to him without such payment, without leaving itself liable to the consignor. Moore on Carriers, § 17, p. 171, and cases cited; 5 Am. & Eng. Enc. Law (2d Ed.), p. 206, and cases cited; 4 Elliott on Railroads, § 1426, and cases cited.

"The indorsement on the face of this bill is not meaningless. In the commercial world, it is a phrase of common use and importing a well-defined meaning. When permitted to be embodied by the initial carrier in the contract made with the plaintiffs, it was accepted by the defendant as a condition precedent to delivery. In an analogous case such a construction has been put upon the term 'draft on bill of lading,' written upon a bill. *A. D. Blowers & Co.* v. *Railway Co.* [C. C.], 155 Fed. 935.

"Both parties to the contract in the case at bar acquiesced in the terms of the bill, which are unambiguous and certain. The authorities are uniform in holding the carrier to a rigorous compliance with the terms of delivery specified in the bill. Without passing upon the question whether recourse to the extrinsic evidence here disclosed would be permissible in amplification of the written contract, or is proscribed as tending to vary it, I see no necessity for extrinsic evidence to determine the true character of this bill. It is in form effectual to impose upon the carrier the duty of exacting payment of the draft before delivery of the shipment."

A judgment was entered against the above-named defendant for the unreturned portion of the goods, and in

favor of the Illinois Central Railroad Company, and the defendant brings the case here by a case-made.

In the court below defendant contended that the act of Congress known as the "Carmack Amendment to the Hepburn Bill," and called the "Initial Carriers' Act," was unconstitutional. That contention has been disposed of by a recent decision of the United States Supreme Court holding the law to be valid. *Atlantic Coast Line, etc., R. Co.* v. *Riverside Mills*, 219 U. S. 186 (31 Sup. Ct. 164).

The defendant contends that there was no negligence or oversight in the delivery of these goods by the Louisiana carrier; that the delivery was in accordance with the form of the shipment selected by the shippers; that they consigned the goods straight to the Louisiana Automobile Club upon a white bill of lading known and recognized as proper for straight shipments; that the plaintiffs did not use the color of paper usual for retaining possession and control of the goods until draft had been paid, nor did they put upon the shipping order, or bill of lading, any words to that effect, except the words "bill of lading attached to draft," and defendant asserts the following propositions based upon its assignments of error:

(1) The actual contract made with this defendant was a contract to carry these goods to the next carrier, that they might be delivered straight to the automobile club.

(2) Delivery according to the bill of lading is delivery according to the contract between the parties, and discharges the carrier's liability.

(3) The words "bill of lading attached to draft," when placed upon a straight and direct bill of lading, are gratuitous. They have no meaning which the carriers and their clerks are bound to regard.

(4) The marks on the boxes themselves must yield to the contract, and the waybills which are made up from the contract. They constitute no contract. The contract is that the carrier has received the property described below in apparently good order, marked, consigned, and destined as indicated below, which the company agrees to carry to the place of destination, if on its roads, other-

wise to deliver to another carrier on the route to its desti-
nation, and the suitable blanks for the purposes of the
contract are filled up by the plaintiff to indicate that the
goods are consigned to the Louisiana Automobile Club,
"bill of lading attached to draft."

Under the act of Congress above referred to, it is im-
material which carrier committed the alleged wrong, and
the case rests on the question whether or not there was
any wrong at all, and that depends on what was the
original agreement between plaintiffs and defendant re-
garding the shipment.

There is no doubt about the proposition that the bill of
lading in writing, in so far as it is a contract of shipment
and not a mere receipt for goods, cannot be varied by
prior or contemporaneous oral agreements between the
parties. *Sloman* v. *Express Co.*, 134 Mich. 16 (95 N.
W. 999).

An examination of the questions involved leads us to the
conclusion that the circuit judge was correct in holding
that the bill of lading on its face gave notice to defend-
ant not to deliver the goods without surrender of the bill
of lading. We do not think that the blank form of bill of
lading used in the case was controlling. Neither can it
be said that the defendant was deceived by this action of
the plaintiffs, because the findings of fact, supported by
the evidence, show that plaintiffs carefully pointed out to
defendant what they had done, and defendant consented
thereto. We have examined the authorities cited by the
learned circuit judge, and are of opinion that they are ap-
plicable here, and justify the conclusion reached by him.
The words "B. L. attached to draft" were indorsed upon
the face of the bill in a conspicuous place, and in a legible
hand, as found by the circuit judge. It was the duty of
the defendant to observe and give force to these words.
5 Am. & Eng. Enc. Law (2d Ed.), p. 223; 6 Cyc. p. 469.

We think the conclusion of the circuit judge might re-
ceive support upon the ground that the bill of lading itself
is ambiguous. The doctrine seems to be well established

that, if the bill is as to any element of the contract ambiguous, parol evidence is admissible to show what the agreement was in that respect.  6 Cyc. p. 421; *Wolfert* v. *Railway Co.*, 44 Mo. App. 330.  The findings of fact are sufficient to support such conclusion.  This view finds expression in *Rickerson, etc., Co.* v. *Railroad Co.*, 67 Mich. 117 (34 N. W. 273), in the following language:

"The character of the contract must be determined from the receipt, the bill of lading, the shipping order, the situation and knowledge of the parties and their agents, and all the circumstances surrounding the transactions having any bearing on the subject."

Even if the bill of lading was peculiar, or of doubtful meaning on this point, because of uncertainty as to the qualifying words indorsed thereon, then evidence of what the parties said and agreed to at the time as to the meaning of these words, assisted by the direction of the boxes themselves, is entirely competent to explain and make clear the uncertainty, and does not contradict the contract.  4 Wigmore on Evidence, p. 3492; *MacKinnon Boiler & Machine Co.* v. *Land Co.*, 156 Mich. 11 (120 N. W. 26); *Lowrey* v. *Hawaii*, 206 U. S. 206 (27 Sup. Ct. 622); *New England, etc., Co.* v. *Worsted Co.*, 165 Mass. 328 (43 N. E. 112, 52 Am. St. Rep. 516).

It is always competent where such uncertainty exists to receive evidence of the circumstances surrounding the making of the contract, including the position of the parties and the things said and done by them.  *Ferris* v. *Wilcox*, 51 Mich. 105 (16 N. W. 252, 47 Am. Rep. 551); *Rundle* v. *Scully*, 144 Mich. 62 (107 N. W. 694).

Upon shipment of goods through a carrier to a third party, and on delivery to the shipper of the bill of lading, the consignee is *prima facie* the owner of the property; but this presumption of ownership may be rebutted by proof of facts showing the actual intent of the shipper at the time the goods were delivered to the carrier for shipment.  *Bank of Litchfield* v. *Elliott*, 83 Minn. 469 (86 N. W. 454).

There can be no doubt of the authority of the local agent to make the contract in the form in which it was made and signed. He was put there by the defendant for the purpose of making such contracts. *Hayes* v. *Railroad Co.*, 163 Mich. 174 (128 N. W. 217).

We are of opinion that the circuit judge reached the correct conclusion in the case, and the judgment of the court below is affirmed.

OSTRANDER, C. J., and BIRD, HOOKER, and BLAIR, JJ., concurred.