* ORTNER *v.* MICHIGAN CENTRAL RAILROAD CO.

CARRIERS—FAILURE TO DELIVER—ORDER BILL OF LADING—LIABILITY OF CARRIER.

> In an action by a shipper against a railroad company for failure to deliver 250 bags of beans shipped over defendant's railroad, where they were covered by an order bill of lading which recited the receipt of the beans consigned to order of shipper, notify C., which, with draft at-

See note in 2 L. R. A. (N. S.) 1078.

tached, was sent to a bank for collection and was returned
to plaintiff unpaid, and later he reshipped them, sur-
rendering the bill of lading to defendant and receiving
another reciting receipt from "owners" of the beans con-
signed to order C., notify P., and requiring its surrender
properly indorsed before delivery of the beans, which he
sent with draft attached to a bank, and it was never paid,
and the beans were never delivered; plaintiff having put
defendant in possession of the beans, and having always
retained control of the bills of lading, *held*, entitled to
recover.

Error to Tuscola; Beach, J. Submitted April 17,
1918. (Docket No. 106.) Decided June 3, 1918.

Assumpsit by John L. Ortner against the Michigan
Central Railroad Company and Henry W. Carr Com-
pany for the nondelivery of a carload of beans. Judg-
ment for defendant railroad company on a directed
verdict, whereupon suit was discontinued as to other
defendant. Plaintiff brings error. Reversed.

*R. L. Crane,* for appellant.

*Cooley, Hewitt & Wixson* (*Humphrey, Grant &
Henry,* of counsel), for appellee.

MOORE, J. This suit was commenced by declara-
tion, the first count of which was in assumpsit, the
other two counts sounded in tort. The trial judge di-
rected a verdict in favor of the railroad company.
The plaintiff discontinued the suit as to the other de-
fendant. The case is here by writ of error.

Plaintiff owned an elevator in Richville and shipped
in February, 1915, two hundred and fifty bags of
beans to the defendant Henry W. Carr Company at
Saginaw as a car load lot over defendant railroad
company's line from Richville to Saginaw. This ship-
ment was covered by an order bill of lading dated
February 23, 1915, and recited the receipt from plain-
tiff of two hundred and fifty bags of beans, consigned
to the order of J. L. Ortner, Saginaw, Michigan, notify

H. W. Carr Company, Saginaw. To this bill of lading was attached a draft on defendant Henry W. Carr Company for the price of the beans, and it was sent through the bank and later returned unpaid to the plaintiff with the bill of lading. The car load of beans was sent to Saginaw but was not taken by Henry W. Carr Company. Plaintiff testifies that in May, 1915, defendant Carr told him that if he shipped the beans to Hammond, Indiana, that Post Brothers of that place would buy them; that soon thereafter plaintiff received by mail a bill of lading from Henry W. Carr Company partly filled out; that upon receiving this second bill of lading he went to the railroad company's agent at Richville, and, after being assured by him it would be all right to do so, turned over to him the February bill of lading, and received from the agent at Richville the second bill of lading duly signed. Plaintiff testifies that at the time he received this second bill of lading and at the time he presented it to Rupprecht, the agent, it was all made out except the signature of the agent. The second bill of lading is dated May 13, 1915, and recites the receipt from "owners" of two hundred and fifty bags of beans consigned "to order the Henry W. Carr Company of Saginaw," Hammond, Indiana, notify Post Brothers at the same place. It is signed "Henry W. Carr Co., per A. E. W.," Shippers, and "John Rupprecht," agent.

The words "consigned to order Henry W. Carr Co., of Saginaw" were printed on the bill of lading. It contained a provision as follows:

"The surrender of this original order bill of lading properly indorsed shall be required before delivery of the property."

This bill of lading with draft on Post Brothers attached was delivered by the plaintiff to a bank for collection and was not paid. Plaintiff did not know Post Brothers and had never heard anything from

them except what he was told by Mr. Carr. The bill of lading and draft later were returned to the plaintiff by the bank. The plaintiff was unable to learn what had become of the beans and invoked the aid of the agents of the railroad company, and had several interviews with defendant's agents. He later was notified they were with the Michigan Warehouse Company at Chicago. He tried to sell the beans and could not and finally went to Chicago to learn what was the trouble. What were said to be his beans were pointed out to him. He testified that the beans there shown him as having arrived in the car moving from Saginaw were not his beans. That his beans were hand-picked and in new bags, while those shown him were cull beans and in old bags.

In the course of the correspondence plaintiff received the following:

"New York Central Lines.
"MICHIGAN CENTRAL RAILWAY COMPANY.
"SAGINAW, E. S., MICH., Sept. 24, 1915.
"MR. J. L. ORTNER,
"Richville, Mich.

"*Dear Sir:* Referring to your conversation regarding car load of beans shipped to Hammond, Ind., on May 14th in M. C. 46432.

"The Michigan Warehouse Company advised me at the present charges against this shipment up to and including October 4th will be $94.77 which is made up as follows:

"Freight charges and car service $68.52, storage $26.25. Would suggest that you have taken care of without delay to avoid paying further storage.

"Yours truly,
"S. S. ARMSTRONG, Agent."

A check was sent for this amount but the Michigan Warehouse Company declined to receive it without a surrender of the bill of lading. In October, plaintiff made a written demand on the railroad company for the beans or the value thereof. The defendant de-

clined to pay or them, assigning as a reason that the time limit in the bill of lading for making a claim had expired. November 9, 1915, plaintiff sent to the railroad company a draft of $68.52 in payment of its charges. This draft was indorsed by the railroad company and paid November 27, 1915.

Suit was commenced April 4, 1916. Defendants introduced no witnesses. As before stated, a verdict was directed in favor of the railroad, and it is insisted this was properly done. We quote from the brief of counsel:

"The case is clearly governed by the decision in *Nelson Grain Co.* v. *Railroad Co.*, 174 Mich. 80 (140 N. W. 486). This case has been so recently and so frequently before this court that an extended review of the facts is unnecessary."

The case cited differs from the case before us in the very important particular, that in that case the shipment was delivered to the consignee named in the bill of lading, while in the instant case there has been no delivery of the beans.

In *Ithaca Roller Mills* v. *Railroad Co.*, 197 Mich. 440 (163 N. W. 934), Justice FELLOWS, speaking for the court, said:

"The bill of lading as drawn, made Voorheis Bros. *prima facie* the owner of the goods shipped; this upon the theory that, where goods are shipped through a carrier to a third party, on delivery to the shipper of a bill of lading, the consignee is *prima facie* the owner. But this presumption may be overcome by proof of facts showing the actual transaction and the intent of the parties. *Sturges* v. *Railway Co.*, 166 Mich. 231 (131 N. W. 706) ; *Turnbull* v. *Railroad Co.*, 183 Mich. 213 (150 N. W. 132). In the instant case the proof is conclusive and undisputed that plaintiff's contract with Voorheis Bros. called for delivery of the goods to them at Homestead ; the defendant acknowledge receipt of the goods for transportation from the plaintiff ; named it in the bill of lading as the shipper ; the

contract of carriage was with it. Beyond question the plaintiff was the owner of the goods until their delivery to Voorheis Bros., was the owner when the damage was done, was the party with whom defendant contracted, and therefore can maintain this action in its own right for the negligent performance of the contract of carriage entered into between it and defendant."

In the case we are considering the plaintiff put the railroad company in possession of the beans. He has always retained control of the bills of landing. The beans in fact have never been delivered. Instead of directing a verdict in favor of the defendant upon the showing made, one should have been directed in favor of the plaintiff.

The judgment is reversed and a new trial ordered, with costs to the plaintiff.

OSTRANDER, C. J., and BIRD, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.