## GEORGE JUDSON AND OTHERS v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

October 22, 1915.

Nos. 19,173—(37).

**Carrier — delivery of shipment.**

1. A common carrier may not safely deliver a shipment to the order of a consignee named in an order bill of lading without the production of such bill of lading properly indorsed.

**Bill of lading.**

2. The provisions of an order bill of lading, adopted by the railroads in the form recommended by the interstate commerce commission, which requires the bill of lading properly indorsed to be surrendered upon delivery of the shipment, is for the benefit of the shipper or owner as well as for the protection of the carrier.

**Action against carrier for conversion of shipment.**

3. By shipping goods under such an order bill of lading, consigned to the order of another, the owner and shipper is not estopped from asserting a claim for conversion against the carrier who has made delivery to the order of the consignee named without requiring the production of the bill of lading with the indorsement therein called for.

Action in the district court for Hennepin county by the members of the firm of Judson Brothers to recover $1,753.12, the value of a carload of beans wrongfully delivered by defendant carrier. The case was tried upon an agreed statement of facts before Dickinson, J., who made findings and ordered judgment in favor of plaintiffs. From an order deny-

[1] Reported in 154 N. W. 506.

---

Note.—To whom delivery may be made by carrier under bill of lading, see note in 38 L.R.A. 358.

For refusal of carrier to deliver goods as a conversion, see note in 50 L.R.A.(N.S.) 1172.

ing its motion for judgment notwithstanding the findings of fact and conclusions of law or for a new trial, defendant appealed. Affirmed.

*W. H. Bremner* and *F. M. Miner,* for appellant.

*Stiles & Devaney,* for respondents.

HOLT, J.

Plaintiffs sold a carload of beans to A. J. Thompson Company for a specified price which the purchaser agreed to pay upon the arrival of the carload at Fort Dodge, Iowa. The beans were to be loaded and shipped from Durand, Michigan, via the Grand Trunk Railway System, billed and consigned by plaintiffs to the order of "A. J. Thompson Co., notify Iowa Grocery Co.," and plaintiffs were to draw their draft for the agreed purchase price, forward the same with the original bill of lading attached to a bank at Kansas City, Missouri, to be presented to A. J. Thompson Company for payment, and, upon the same being paid, the bill of lading was to be delivered to the purchaser. Pursuant to this agreement plaintiffs delivered the beans to the Grand Trunk Railway System at Durand, Michigan, and obtained a bill of lading naming plaintiffs as consignors and consigning the shipment to the order of said A. J. Thompson Company. The bill of lading contained this provision: "The surrender of this original order bill of lading properly indorsed shall be required before the delivery of the property." As agreed, the draft was forwarded with the original bill of lading attached, but was not paid when presented and was returned to plaintiffs. The carload was transported to the destination, and by the defendant, the last carrier, delivered to the Iowa Grocery Company upon the written order of the consignee, but without the production of the original bill of lading. Plaintiffs sued defendant as for conversion, and upon the facts stated a recovery was allowed. Defendant appeals.

The consignee of a shipment is the presumptive owner thereof. Benjamin v. Levy, 39 Minn. 11, 38 N. W. 702; Dyer v. Great Northern Ry. Co. 51 Minn. 345, 53 N. W. 714, 38 Am. St. 506; Bank of Litchfield v. Elliott, 83 Minn. 469, 86 N. W. 454. But the presumptive ownership may be rebutted. The provisions of a bill of lading under which the shipment is made govern the rights of both carrier and shipper. The bill of lading becomes the symbol of the property described therein, and

the transfer of the bill of lading transfers the property. Therefore, while such bill of lading is outstanding, the carrier delivers the shipment at its peril, if it turns out that under the terms and provisions thereof the one to whom delivery was made was not entitled thereto. Ratzer v. Burlington, C. R. & N. Ry. Co. 64 Minn. 245, 66 N. W. 988, 58 Am. St. 530; Ryan v. Great Northern Ry. Co. 90 Minn. 12, 95 N. W. 758; Barnum Grain Co. v. Great Northern Ry. Co. 102 Minn. 147, 112 N. W. 1030, 1049. In section 1426 of Elliott on Railroads it is said: "If it (bill of lading) is issued to the true owner of goods, it secures his title thereto during the period of transportation while the ownership and possession are severed." In the instant case plaintiffs were the actual owners, the title never passed to the consignee. They also retained under their control the symbol of ownership, the bill of lading.

The statement sometimes found in text books and in decisions that the carrier will be protected whenever delivery is made to the consignee, should be subject to the qualification that such delivery be also made according to the provisions of the shipping contract to which the shipper and the carrier are the immediate parties. It should be presumed that such contracts are made with reference to commercial usages with respect to the extensive shipments of grain and merchandise constituting such an important part of the transportation business, and so as to protect both the owner of the property and the carrier. Hence provisions in shipping contracts are not to be construed for the sole protection of one of the parties thereto, unless plainly so intended. It is common knowledge that very often the consignor is the owner of the shipment. And it is a daily occurrence to pledge the goods shipped to secure advances, and this is done by assigning the bill of lading, the symbol of the property. Often a consignor makes a conditional sale, as in this case, under the terms of which the goods are to be shipped and delivered upon payment by the consignee of the draft for the purchase price, usually forwarded attached to the bill of lading. The usages of the business world should not be lost sight of in construing shipping contracts.

This was an interstate shipment. Long ago the interstate commerce commission, whose business it is to regulate and make uniform rules in respect to interstate commerce, recommended two distinct forms of

bills of lading. The carriers seem to have adopted these forms, one being the "straight" and the other the "order" form. The purpose to be served by the latter, the one in question, is thus stated by the commission: "The main point in this connection is that the 'order' bill will possess a certain degree of negotiability, while the 'straight' bill will be non-negotiable and is to be so stamped upon its face. Moreover, and this is a matter of consequence, the order bill of lading will be required to be surrendered upon or before the delivery of the property to the consignee. It is believed that this plan will in large part meet the requirements of the banking concerns of the country which advance vast sums of money upon bills of lading and are entitled to a reasonable measure of protection." 14 Interstate Commerce Commission Reports, No. 787, June 27, 1908 [p. 348]. The carriers in adopting the recommended order form should be held to have intended to accomplish the object suggested by the commission. That being so, the provision that the order bill of lading must be surrendered before delivery of the property to the consignee is hardly to be treated as a provision solely for the protection of the carrier and which may be waived by such carrier. We think it may also be invoked to protect the shipper, if he be the real owner of the property. The language used is direct and plain that the bill of lading properly indorsed shall be required by the carrier before delivery. Had the intention been to make the surrender provision optional with the carrier, it would have been expressed in apt language. It may be noted that the "order" bill of lading recommended is not made to depend upon the fact of being to the order of the consignor or of the consignee. In either event there should be a surrender of the bill by the holder thereof upon delivery of the shipment.

· We do not think the authorities presented by appellant are convincing that the provision mentioned in an "order" bill of lading is solely for the benefit of the carrier which it may waive with impunity. In Chicago Packing & P. Co. v. Savannah, F. & W. Ry. Co. 103 Ga. 140, 29 S. E. 698, 40 L.R.A. 367, the bill of lading was made to the order of the shipper, who wrote and signed upon its face "Deliver to Hobbs & Tucker, or order, for collection." The goods were delivered upon Hobbs & Tucker's written order, while they held the bill of lading attached to the draft of the shipper, but the draft was not paid nor the

bill of lading surrendered. The nonliability of the carrier might there well be placed upon estoppel, without a determination of the effect of the surrender provision in the bill of lading. Nebraska Meal Mills v. St. Louis S. W. Ry. Co., 64 Ark. 169, 41 S. W. 810, 38 L.R.A. 358, 62 Am. St. 183, and Weisman v. Philadelphia, W. & B. R. Co., 22 R. I. 128, 47 Atl. 318, involved "straight" bills of lading, and in the last named case no provision apparently was made in the bill of lading requiring its production as the condition of receiving delivery. With some confidence defendant points to the case of Nelson Grain Co. v. Ann Arbor Ry. Co. 174 Mich. 80, 140 N. W. 486. But that case turned upon the fact that the consignor and consignee were the same party. The owner, when the goods were shipped, took a bill of lading wherein the consignee was also designated as consignor, and it contained no mention of the owner's name, and no recovery by the owner was permitted against the carrier, who delivered to the consignor-consignee without the surrender of the bill of lading. Two later cases decided by the same court upon facts identical with the case at bar, except that the actions were against the initial carrier, allowed a recovery, expressly planting the decision upon a violation by the carrier of the surrender provision in the bill of lading. Turnbull v. Michigan Central Ry. Co., 183 Mich. 213, 150 N. W. 132; and Thomas v. Blair, 185 Mich. 422, 151 N. W. 1041. We apprehend the last carrier is bound by the terms of the contract of shipment made by the initial carrier, even if it had no knowledge of its terms or had been misinformed regarding the same by a preceding connecting carrier. Foy v. Chicago, M. & St. P. Ry. Co. 63 Minn. 255, 65 N. W. 627. Ordinarily neither the initial carrier nor a connecting carrier ought to be regarded as the shipper's agent in an action by the shipper for violation of the contract of carriage of a through interstate shipment. While it is stated in Famous Mnfg. Co. v. Chicago & N. W. Ry. Co. 166 Iowa, 361, 47 N. W. 754, cited by defendant, that the provision in the bill of lading for its surrender before delivery of the shipment was for the benefit of the carrier, the case turned on the fact that the delivery was made to the person designated by the holder of the indorsed bill of lading and was in legal effect a delivery to such holder. Beside the two Michigan cases, cited on the proposition that the surrender provision in a bill of lading is not for

the sole benefit of the carrier, we may call attention to Merchants Nat. Bank v. Baltimore, C. & R. S. Co., 102 Md. 573, 63 Atl. 108; Canandaigua Nat. Bank v. Cleveland, C. C. & St. L. Ry. Co., 155 App. Div. 53, 139 N. Y. Supp. 561; and First Nat. Bank of Clarkston v. Oregon-Washington R. & N. Co. 25 Idaho 58, 136 Pac. 798.

We do not believe any estoppel can with justice be urged because plaintiffs consigned the shipment to the order of A. J. Thompson Co. instead of to their own order, especially by a carrier who has failed to observe the plain stipulations of the contract of carriage, which, if observed, would have fully protected both parties. Plaintiffs, consignors by the bill of lading, never authorized a delivery to the order of the consignee unless the latter had properly indorsed the bill of lading. The carrier took chances when the delivery was made without ascertaining that this had been done, and it should now stand the loss.

Order affirmed.