KEMPER MILL & ELEVATOR CO. v. WALKER D. HINES, Director General of Railroads, Appellant.

Division One, March 14, 1922.

1. **INTERSTATE SHIPMENTS:** Liability of Initial Carrier. The initial carrier of an interstate shipment is liable for the acts of the connecting or terminal carrier, under the Federal Uniform Bills of Lading Act.

2. ———: ———: Reconsignment by Carrier at Terminal Point. The reconsignment of an interstate shipment by the initial carrier at

the terminal point to other points, although it does not issue any new bills of lading but simply writes in the billing the new destination, is a delivery of the commodity to the consignee; and unless such delivery was authorized by the shipper, the initial carrier, upon the consignee's refusal to accept the goods, is liable as for a conversion, without any subsequent demand therefor; but if such delivery was authorized by the shipper, the initial carrier is not liable.

3. ——: ——: ——: Conversion: Surrender of Way Bill. The carrier is not obliged to make delivery of goods hauled by it to a designated point except upon the production and surrender of the bill of lading, and if at such point re-consigns the shipment to another point, unless authorized so to do by the shipper, and delivers the goods to the consignee there, without at any time having the bill of lading in its possession, it is liable as for conversion.

4. ——: ——: Parol Reconsignment. Where goods shipped by an interstate carrier are deliverable at the end of its line to the order of the consignor, the consignor can, as long as he is the holder of the bill of lading, authorize his agent to receive the goods for him, without surrendering the bill, and the delivery will be good as between him and the carrier, no rights of third parties intervening. Nor is the consignor's authority to his agent to receive the delivery of the goods required to be in writing, nor does the fact that the bill of lading itself is required to be in writing require the authority of the agent receiving the goods thereunder to be in writing.

5. ——: ——: Statute of Frauds. After a contract is completely executed by one party, the other cannot invoke the Statute of Frauds. So that if the initial carrier of goods surrendered possession of them at the end of its line to the consignee under verbal authority given it by the consignor, the delivery having been completely executed, the Statute of Frauds cannot be invoked by the consignor to fasten liability on the carrier as for conversation, even if statutory law required the authority of the agent to receive such delivery to be in writing.

6. ——: ——: Alteration of Bill of Lading. The provision of the Federal Uniform Bill of Lading Act (Sec. 8604-g, U. S. Compiled Stats. 1918) that "any alteration, addition or erasure in a bill after its issue without authority from the carrier issuing the same, either in writing or noted on the bill, shall be void, whatever be the purpose and nature of the change, and the bill shall be enforceable according to its original tenor," has no application to parol agreements between the consignor of a shipment and •

the parties to be notified, by which they are made agents of the consignor of a shipper's order bill to receive the goods from the carrier without the production or surrender of the bill.

7. ——: ——: **Notifying Purchaser: Special Parol Agreement.** The mere fact that the purchaser of goods is required to be notified by the bills of lading in no way gives him any right in, or authority to receive, the goods, or makes him the agent of the consignor to receive them; but such purchaser may be specially authorized by the consignor to receive them at the end of the initial carrier's line, and to re-consign them for and on account of the consignor as his agent, and such agency may be established by parol testimony.

8. ——: ——: ——: **Statutory Provision.** The provision of the Federal Uniform Bill of Lading Act (Sec. 8604-d, U. S. Compiled Stats. 1918) that "the insertion in an order bill of the name of a person to be notified of the arrival of the goods shall not limit the negotiability of the bill or constitute notice to a purchaser thereof of any rights or equities of such person in the goods," applies only to contests with purchasers of the bill, and has no application to contests between the carrier and the shipper while the shipper is still the owner and holder of the bill.

9. ——: ——: ——: **Custom.** Testimony that it was the custom for all persons mentioned in shipper's order bills of lading as the parties to be notified when the goods arrived at the end of the interstate carrier's line, to authorize the carrier to divert the goods to other points, without producing the bills of lading and without special authority from the shippers, is not competent evidence.

10. ——: ——: **Interest: Conversion.** Interest at six per cent per annum on the value of goods converted by an interstate carrier, from the time of the conversion, is recoverable, in the discretion of the jury.

11. ——: ——: **Value of Goods Converted.** Where the bill of lading provides that the measure of damages in case of the wrongful delivery of the goods to the consignee is the value of the goods at the time and place of shipment, testimony as to their value at the time of their conversion is not competent, such provision in the bill being valid.

Appeal from Jackson Circuit Court.—*Hon. Thos. B. Buckner,* Judge.

Reversed and remanded.

*William E. Lucas, W. F. Evans, E. H. Grady* and *John H. Lucas* for appellant.

(1) The petition does not state facts sufficient to constitute a cause of action for conversion, and the evidence wholly fails to sustain a verdict therefor. The appellant's request for an instructed verdict should have been given and the court erred in the refusal thereof, to which refusal, appellant excepted at the time. (a) The petition does not allege a demand and refusal to deliver the shipment, nor does the evidence show that any was made, without which, there can be no conversion. Nanson v. Jacob, 93 Mo. 340; 1 Bouvier's Law Dictionary (3 Rev.) p. 983; Lovelass v. Fowler, 79 Ga. 134; Polk v. Allen, 19 Mo. 467; 3 Bouvier's Law Dictionary (3 Rev.) 3327; 4 R. C. L. 290. (b) There was no tortious taking, without which there can be no conversion. 38 Cyc. 2028; Solberg v. Railroad, 228 Pa. 641; Ry. Co. v. Land & Inv. Co., 247 Fed. 268; Ry. Co. v. French & Co., 41 S. C. 215. (c) There was no use or appropriation indicating a claim of right against respondent. Nanson v. Jacob, 93 Mo. 337; Santa Fe Ry Co. v. Land & Inv. Co., 247 Fed. 268; 4 R. C. L. 290; 38 Cyc. 2028; Solberg v. Railroad, 228 Pa. 641; Schopp Trust Co. v. Mo. Pac. Ry. 115 Mo. App. 338; Sloane v. Caroline Railroad Co., 126 N. C. 487; Mill Co. v. Stocum & Southwestern Ry. Co., 228 S. W. 849; Parker Bell Lumber Co. v. Northern Ry. Co., 69 Wash. 124, L. R. A. (N. S.) 1065. (2) Error in admission of incompetent and immaterial evidence, offered by respondent, and refused to admit competent and material evidence offered by appellant. (a) The bills of lading were issued in the name of and by the St. Louis & San Francisco Railway Company, and as against appellant, were inadmissible, under respondent's theory that being in writing they could not be varied by parol. (b) Introduction of parol evidence, checks, drafts covering price paid by respondent for meal at Republic and Aurora, Missouri; of letters, exhibits and parol evidence

of respondent, all of which were self-serving and without tendency to prove conversion by appellant, which were misleading, tending to withdraw the attention of the trier of the facts from the issue of conversion and loss, if any, ensuing therefrom. Dillon v. Hunt, 105 Mo. 162; 8 R. C. L. 489, par. 49. (c) The evidence of Nellis, as to value of property at East Joliet, when there was neither conversion nor markets at East Joliet, and which was altogether·speculative and conjectural. (3) The court erred in the rejection of competent and material evidence offered by appellant. (a) Appellant's contention was that by the use of the words "notify Jonas F. Eby & Son" it was intended that notify party could direct shipments to place of sale. This contention, the court rejected, striking out plea, rejecting evidence, and giving instruction. (b) Evidence of custom was admissible. 27 R. C. L. 183; Levi & Co. v. Railroad, 157 Mo. App. 545; Bradford v. Hines, 227 S. W. 891; Bank of Commerce v. Elevator Co., 268 Mo. 541; Klein v. Klein, 281 Mo. 323; Lowell v. Newman, 192 Fed. 756; The Carlos F. Roses, 177 U. S. 665; Santa Fe Railroad Co. v. Harold, 241 U. S. 371; Pere Marquette Railroad Co. v. French & Co., 41 S. C. Rep. 215. (c) Proof of express authority given subsequent to issuance of bills of lading did not vary written contract. Pecos Valley Bank v. Evans-Snider-Buel Co., 107 Fed. 659; Rowland v. Biesecker, 185 Fed. 517, Stark Electric Co. v. McGinty Co., 238 Fed. 658; Bradford v. Bank Co., 13 How. 57. (d) The court erred in refusing to admit evidence of the condition of the meal at Philadelphia and Lowell and the value and the rejection thereof. Lane v. Mo. Pac., 132 Mo. 23; Streeper v. Abeln, 59 Mo. App. 488; Eddy v. Baldwin, 32 Mo. 369; Green v. Gallagher, 35 Mo. 226. "Even in criminal cases the rule is, evidence of other crimes connected with one charged, may be shown." State v. Tabor, 95 Mo. 585; State v. Harold, 58 Mo. 496; State v. Rider, 95 Mo. 474. (4) The court erred in giving instructions 1 and 2 for the respondent. They

both enlarge and restrict the issue tendered by the pleadings. (a) Enlarge the issues, in that they do not limit the recovery to the amount fixed by the petition. (b) Declare undisputed what is denied both in pleading and proof "that defendant issued and delivered bill of lading." (c) Ignore the issues of use and custom and of express authority and limit the right of delivery to surrender of bill of lading properly indorsed. (d) Ignore necessity of demand and refusal and predicate right to deliver solely on production and endorsement of bills of lading. (e) Limit conditions of meal to East Joliet without evidence as to condition and value at that point. Orris v. Ry. Co., 279 Mo. 15; Schumacker v. Breweries Co., 247 Mo. 160; Black v. Rys. Co., 217 Mo. 685; State ex rel. v. Morrison, 244 Mo. 211; Crow v. Railroad, 212 Mo. 610; Drake v. Hospital Assn., 266 Mo. 11; Walker v. Lewis, 140 Mo. App. 33; Summers v. Baker, 158 Mo. App. 672; Huff v. Railroad, 222 Mo. 303; Radtke v. Basket & Box Co., 229 Mo. 18; McGrath v. Const. Co., 165 Mo. App. 195.

*Hagerman & Jost* for respondent.

(1) The bills of lading are contracts, and are the sole measure of the rights of the plaintiff and the obligations of the defendant. 4 Fed. Stat. Ann. p. 506; 8 U. S. Comp. Stat. 1916, p. 9289, sec. 8604-a; Underwood v. Hines, 222 S. W. 1037; King v. Barbarin, 249 Fed. 305; Georgia Ry. Co. v. Blish Milling Co., 241 U. S. 190, 60 L. Ed. 951; McGinn v. Ry. & Nav. Co., 265 Fed. 84; Brockman Comm. Co. v. Mo. Pac. Ry. 195 Mo. App. 615; Aradalou v. Railroad, 114 N. E. (Mass.) 299; Lewis Poultry Co. v. Railroad, 105 Atl. (Me.) 112; Strahs v. N. Y. Cent., 184 N. Y. Supp. 365; Cincinnati Ry. Co. v. Luke, 186 S. W. (Ky.) 875; M. K. & T. Railroad Co. v. Ward, 244 U. S. 383, 61 L. Ed. (U. S.) 1215. (2) The bills of lading, in so far as they pertain to ownership, transportation, destination and delivery being contractual, may not be controlled, altered or modified:

(a) By parol evidence. Thee v. Wabash Railroad, 217 S. W. 567; 4 Am. & Eng. Ency. Law (2 Ed.) 540; 4 R. C. L. sec. 23, p. 21; 10 C. J. 209, 210; Vittuci Co. v. Canadian Pac. Ry., 238 Fed. 1005; Bark Delaware v. Oregon Iron Co., 14 Wall. (U. S.) 579, 20 L. Ed. 783; 2 Ency. Ev. 873; Inman & Co. v. Seaboard Airline Ry., 159 Fed. 965; Vanderbilt v. Ocean S. S. Co., 215 Fed. 888; 1 Hutchinson on Carriers (Matthews and Dickinson Ed., 1906) sec. 167, p. 178; 1 Michie on Carriers, p. 332, sec. 469. (b) Nor by any evidence of any alleged practice or custom inconsistent therewith. Coal & Dock Co. v. Transit Co., 220 Fed. 35; The Rebecca Douglass, 248 Fed. 367; Hirsch v. Georgia Iron & Coal Co., 169 Fed. 580; The Mary Bradshaw, 155 Fed. 696; 2 Ency. of Ev. 875; 4 Am. & Eng. Ency. Law (2 Ed.) 1545; Kimball v. Brawner, 47 Mo. 400; 4 R. C. L. sec. 27, p. 25; Nat. Bank v. Mo. Pac. Ry., 132 Mo. 500; 1 Michie on Carriers, p. 560, sec. 865. (c) Nor by evidence of any alleged oral agreement or understanding claimed by Eby & Son, the notify party, to have been had with plaintiff, under which said notify party asserted authority and control over the shipments, and whose orders are now invoked as a defense to defendant's removal and disposition of the meal in a manner and to a place different from the positive terms of the bills of lading. Sec. 8604-g, p. 9314, 8 U. S. Comp. Stat. 1916; Pioneer Trust Co. v. Mo. Pac. Ry., 224 S. W. 106; Pettigrew v. Lynch, 204 S. W. 741; P. & M. Coal Co. v. Harris Coal Co., 193 Mo. App. 664; Belknap v. Railroad, 91 S. E. (W. Va.) 658; Southern Express Co. v. Smith, 122 N. E. 427; Harwood-Barley Mfg. Co. v. Illinois Cent., 74 So. (La.) 573; Voghel v. Railroad, 103 N. E. (Mass.) 287. (d) Since the contract was required to be in writing by the statute, its terms and provisions could not be varied or modified by any subsequent oral agreement. Sec. 8604-g, 8 U. S. Comp. Stat. 1916; Walker v. Overland Co., 191 S. W. 1062; Georgia F. & A. Ry. Co. v. Blish Milling Co., 60 Law Ed. (U. S.) 952. (3) Eby & Son as notify party

in the bills of lading had no interest or authority over the shipments, and the defendant was not justified in dealing with them as the alleged agent of the plaintiff. Fed. Stat. Ann. 1918 Supp. p. 74, sec. 6; 8 U. S. Comp. Stat. 1916, p. 9312, secs. 8604-d, 8604-e; Brockman Comm. Co. v. Mo. Pac. Ry. Co., 195 Mo. App. 613; 4 R. C. L. p. 842, sec. 294; Bennett v. Dickinson, 186 Pac. 1005, 190 Pac. (Kans.) 757; Barton v. L. & N. Railroad, 196 S. W. 380; Hall v. Norfolk-So. Railroad, 91 S. E. (N. C.) 607; 10 C. J. 259; 2 Hutchinson on Carriers (3 Ed., Mathews and Dickinson) p. 819, sec. 736; 1 Michie on Carriers, p. 560, sec. 865. (4) The reconsignment at East Joliet Illinois by Eby & Son, the notify party in the bill of lading, was void and not binding as against the plaintiff, the holder of the bills of lading, and was in legal effect a delivery of the meal to said notify party by the defendant, in violation of his contract with the plaintiff. M. K. & T. v. Ward, 61 L. Ed. (U. S.) 1213; McGinn v. Ore-Washington R. & Nav. Co., 265 Fed. 84; Pere Marquette Ry. Co. v. French, 41 S. C. Rep. 195; Bank v. Railroad, 158 Mo. App. 532; Pioneer Trust Co. v. Mo. Pac. Ry., 224 S. W. 106; Perkett v. Railroad, 141 N. W. (Mich.) 612. (5) The E. & J. Railroad as terminal carrier under these bills of lading in removing and transporting the meal from the destination named in the bills of lading to other and different places, on the orders of Eby & Son, the notify party, who did not have and who never had the bills of lading, and in taking from said notify party an indemnity bond and entering into a new contract with said notify party by which he was put in control of the shipment and allowed to remove the same, without requiring the production of the bills of lading properly endorsed, was a conversion of the meal for which the initial carrier is liable in this action. Secs. 8604-e, 8604-ee, U. S. Comp. Stat. 1916, p. 9313; King v. Barbarin, 249 Fed. 305; Georgia Railroad Co. v. Blish Milling Co., 241 U. S. 190, 60 L. Ed. 951. (6) It was not necessary to allege or prove a demand on and refusal

by defendant, since the evidence otherwise established a conversion. 26 R. C. L. 1122, sec. 33; Union Naval Stores Co. v. United States, 240 U. S. 284; 38 Cyc. 2066; Richardson v. Ashby, 132 Mo. 247; Knipper v. Blumenthall, 107 Mo. 665; Lafayette Bank v. Metcalf, 40 Mo. App. 502; 13 Ency Ev. 83; Ward v. Storage Co., 119 Mo. App. 90; Pettigrew v. Lynch, 204 S. W. 741; Bank v. Railroad, 158 Mo. App. 519; 21 Ency. Pl. & Pr. 1079. And moreover, since a demand would have been an idle and useless ceremony. Milliken v. Larrabee, 192 S. W. 103; Richardson v. Ashby, 132 Mo. 248. (7) The court properly excluded evidence offered by defendant as to occurrences transpiring after the conversion. Marshall Grain Co. v. Ry., 176 Mo. 492. (8) Defendant's attempt to justify delivery of these particular shipments to the notify party, by evidence that the notify party had taken charge of other shipments and moved them from Joliet to other places, was properly excluded for a variety of reasons: (a) Because the obligation of defendant was measured solely by his written contracts, or bills of lading, the provisions of which could not be altered by an alleged custom or practice growing out of other transactions, and resting in parol. (b) There was no showing or attempt to show that the contractual relations between plaintiff and defendant as to the other shipments were the same as in the shipments in question. Kemper Mill & Elev. Co. v. Mo. Pac., 193 Mo. App. 468. (9) Nor was evidence of the condition of the meal long after the conversion thereof, and at the places to which it had been improperly and unlawfully transported, admissible; its condition and value and the time and place (East Joliet) of conversion being the legal basis upon which to assess damages. 26 R. C. L. 1148, sec. 63; Rivinus v. Langford, 75 Fed. 961; Mayes v. Cunningham, 204 S. W. 406; Coffey v. Bank, 46 Mo. 143; Farwell v. Price, 30 Mo. 587; Martinez v. Vigil, 1915 B, L. R. A. 291; Stringer v. Geiser Mfg. Co., 189 Mo. App. 345; Carter v. Feland, 17 Mo. 391; Charles v. St. L. & Iron Mountain, 58 Mo. 462. Interest on the

value of the converted property from the time of
conversion was properly allowable. Rivinus v. Lang-
ford, 75 Fed. 959, 33 L. R. A. 252; Arkansas Valley Land
& Cattle Co. v. Mann, 130 U. S. 79, 32 L. Ed. 858; 38 Cyc.
2090; Coffey v. Bank, 46 Mo. 143; Sec. 4222, R. S. 1919;
Richardson v. Ashby, 132 Mo. 238.

SMALL, C.—Suit for conversion of two cars of corn
meal shipped by plaintiff over the St. L. & San Francisco
and connecting carriers to East Joliet, Illinois—one car
being shipped from Republic, Missouri, and the other
from Aurora, Missouri. The bills of lading were issued
to plaintiff by said Railroad Company, while in charge
of the Director General of Railroads, and were dated,
respectively, April 12, 1918, and April 16, 1918. They
were shippers' order bills, "Notify Jonas F. Eby &
Son." Plaintiff drew two sight drafts on Eby & Son
at Lancaster, Pennsylvania, and, attaching one of the
bills of lading to each draft, forwarded same for collec-
tion through its bank at Kansas City, with instructions to
deliver the bills of lading to Eby & Son upon payment
of the drafts. The drafts being dishonored by Eby &
Son were with the bills of lading returned to the plain-
tiff. The bills of lading were never in the possession or
ownership of Eby & Son. In the meantime, both of the
cars had been re-consigned by the terminal carrier at
Joliet at the request of Eby & Son, one to Philadelphia,
Pennyslvania, and one to Lowell, Massachusetts. The
terminal company required Eby & Son to give it an in-
demnifying bond, in accordance with its custom in such
cases. No new bills of lading were issued, but the rail-
road billing was simply changed by the terminal com-
pany by inserting therein the new destination of the cars.

On arrival at Philadelphia and Lowell the meal was
found to be spoiled and unmerchantable and was rejected
by Eby & Son.

Plaintiff's evidence tended to show that on July 3,
1918, when it ascertained the consignments had been so
re-shipped and rejected, it demanded payment for the

293 Mo.—7

meal from the defendant, claiming that the terminal carrier at Joliet had no authority to deliver the meal or re-consign it at the request of Eby & Son, they not being the owners, nor having the bills of lading, nor any authority from the plaintiff for so receiving or re-consigning the meal, and that the meal was therefore converted by said terminal carrier, and defendant, as the initial carrier, was liable for its value to the plaintiff. Each bill of lading was in the standard Interstate Commerce Commission form, and provided that the meal, "consigned and destined as indicated below, which said carrier agrees to carry to its usual place of delivery at said destination, if on its road, otherwise, to deliver to another carrier on the route to said destination." Each bill of lading also contained the following provision: "The surrender of the original order bill of lading properly indorsed shall be required before delivery of the property. Inspection of property covered by the bill of lading will not be permitted unless provided by law, or unless permission is indorsed on the original bill of lading or given in writing by the shipper." Each bill also contained the following: "Consigned to order of Kemper Mill & Elevator Company, Destination, E. Joliet, Ill. Notify Jonas F. Eby & Son, at E. Joliet, Ill. Route via C. P. St. L. and via E. J. E."

The defense pleaded in the answer was that plaintiff, at the time of the billing of said corn meal, had a contract with Jonas F. Eby & Son for the sale of a large quantity of meal and billed the same to East Joliet, Ill., to its own order, with directions to notify Jonas F. Eby & Son; that defendant notified Jonas F. Eby & Son as directed and said Eby & Son refused to accept the same at East Joliet, Ill. That thereafter plaintiff authorized and directed said Eby & Son to have one car forwarded to Philadelphia, Pennsylvania, and another to Lowell, Massachusetts, and same was so forwarded; and on its arrival, it was inspected and rejected as unmerchantable, and plaintiff notified thereof. "And defendant denies and says that it is not true that he converted the same."

The reply traversed the new matter in the answer.

At the trial plaintiff's evidence tended to support the allegations of the petition, and that it had never authorized or directed Eby & Son or anyone to have said cars forwarded to Philadelphia or Lowell, or their original destination changed.

Defendant, on its part, offered testimony tending to prove, First: That after the bills of lading were issued, the plaintiff orally authorized the said Eby & Son to instruct the carrier to re-consign or divert the shipments, respectively, from Joliet, Illinois, to Lowell, Massachusetts, and Philadelphia, Pennsylvania, as was done. Second: That the two cars in question were part of an order of 10,000 sacks of corn meal ordered by Eby & Son from plaintiff, originally required to be shipped to Joliet, Illinois, but subsequently changed, by oral agreement of parties before any shipment was made, so as to authorize Eby & Son to order the carrier to re-consign or divert all of said shipments, consisting of twelve or fifteen cars, from Joliet, to various eastern points, and there to be disposed of by plaintiff, or by Eby & Son, as agents for the account of plaintiff, and that all of the other cars were so diverted under such changed agreement and disposed of by plaintiff or for plaintiff by said Eby & Son, prior to July 3, 1918, when plaintiff first notified defendant that it had not authorized the cars in suit to be diverted or forwarded to Philadelphia or Lowell, and that plaintiff would hold the defendant liable as for a conversion of the same. Third: That it was the custom for all shipments made to Joliet, which was not a market for corn meal, but a convenient railroad center from which to reach other points or markets, under bills of lading to shippers' order, notifying certain parties, for the shipments to be diverted to other points by the carrier at the request of the notify parties, without surrendering or having the bills of lading in their possession or having any special authority from the shippers authorizing such re-consignment or diversion.

On objection of plaintiff, all of above testimony offered by defendant was excluded by the court.

The bills of lading provided that: "The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the place and time of shipment under this bill of lading, including freight charges if paid." Both parties tried the case on the theory that the measure of damages was the value of the meal at the time and place of conversion, and defendant assigns error as to certain testimony admitted for plaintiff as to the value of the meal, but which we need not notice in the view we take of the time and place of determining such value.

Defendant also complains of the court's refusal of its demurrer to plaintiff's evidence, and of certain instructions asked by it, and of the giving of certain instructions for the plaintiff, but the decision of this court on the action of the lower court in excluding the evidence aforesaid offered by defendant, and on other points herein, will also determine the propriety of such instructions and they need not be specifically set out or further referred to.

The verdict was for the plaintiff for $9,091, or $433.50 more than was claimed in the *ad damnum* clause in the petition.

The court overruling defendant's motion for new trial, it duly appealed to this court.

I. The shipments in question being interstate shipments, it is not denied that the defendant, as the initial carrier, was liable for the acts of the terminal Liability carrier at East Joliet under the Federal Uniof Initial form Bills of Lading Act. [Railroad v. Blish Carrier. Milling Company, 241 U. S. 190.]

II. We think, too, that the act of said terminal carrier, at the request of Eby & Son, in re-consigning the corn meal from Joliet to eastern points by changing the way bills, although it did not issue any new bills of

Conversion.

lading, was a delivery of the meal to Eby & Son (Pere Marquette Railroad Co. v. French & Co., 41 Supreme Court Reporter, 195) ; and unless such delivery was authorized by plaintiff, the defendant is liable as for a conversion of said meal without any subsequent demand therefor.    But if such delivery was authorized by plaintiff, the defendant is not liable herein.    [Railroad v. Blish Milling Co., 241 U. S. 190; Marshall & Co. v. Railroad, 176 Mo. 480; Pere Marquette Railroad Co. v. French & Co., 41 Supreme Court Reporter, 195.]

In the case last cited the person to whom the goods were delivered had procured the bill of lading illegally and did not surrender it to the carrier, but he had it, duly indorsed, in his possession, and it was upon the ground that he had it in his possession that the court justified the carrier in delivering the goods to him.    But in disposing of the case the court announced the law as follows, at page 198:

"There is nothing in the act which imposes upon the carrier a specific duty to the shipper to take up the bill of lading.    Under Section 8 the carrier is not obliged to make delivery except upon production and surrender of the bills of lading; but it is not prohibited from so doing.    If instead of insisting upon the production and surrender of the bill it chooses to deliver in reliance upon the assurance that the deliveree has it, so far as the duty to the shipper is concerned, *the only risk it runs is that the person who says he has the bill may not have it. If such proves to be the case, the carrier is liable for conversion and must, of course, indemnify the shipper for any loss which results.*    Such liability arises, not from the statute, but from the obligation which the carrier assumes under the bill of lading.  .  .  .

"Although there is a conflict of language in the cases in which a shipper sues a carrier for delivery of the goods without requiring a surrender of the bill of lading, there appears to be no conflict of principle or in decision.

Where the failure to require the presentation and surrender of the bill is the cause of the shipper losing his goods, a delivery without requiring it constitutes a conversion. [Babbitt v. Grand Trunk Railroad, 285 Ill. 267, 120 N. E. 803; Turnbull v. Michigan Central, 183 Mich. 213, 150 N. W. 132; Judson v. Minn. & St. Louis Railroad Co., 131 Minn. 5, 154 N. W. 506; First National Bank v. Oregon-Washington Railroad Company, 25 Idaho, 58, 136 Pac. 798; Railroad v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 Law Ed. 948.] *But where delivery is made to a person who has the bill or who has authority from the holder of it,* and the cause of the shipper's loss is not the failure to require surrender of the bill, but the improper acquisition of it by the deliveree or his improper subsequent conduct, the mere technical failure to require presentation and surrender of the bill will not make the delivery a conversion. [Chicago Packing Co. v. S. F. & W. Railroad Company, 103 Ga. 140, 29 S. E. 698, 40 L. R. A. 367; Famous Mfg. Co. v. C. & N. Railroad Company, 166 Iowa, 361, 147 N. W. 754; Nelson Grain Co. v. Railroad Company, 174 Mich. 80, 140 N. W. 486; St. Louis, Southwestern Railroad v. Gilbreath, 144 S. W. 1051.]'' (Italics ours.)

III. As we have seen, the above case of Pere Marquette Railroad Co. v. French & Co., 41 S. C. Rep. 195, holds that the railroad company may deliver the goods to the holder of a shipper's order bill of lading (even though not the lawful holder), without the presentation or surrender of the bill. In the case before us, the plaintiff or consignor remained the lawful holder of the bills at the time of the delivery to or re-consignment by Eby & Son. The goods could therefore have been delivered to plaintiff at that time, without the surrender of the bills of lading.

Surrender of Way Bill.

IV. The provisions of the act of Congress aforesaid (U. S. R. S. 1918, Compact Ed., sec. 8604-e) au-

**Delivery by Agent.** thorize the carrier to make delivery to "(a) A person lawfully entitled to the possession of the goods" or "(c) A person in possession of an order bill for the goods, by the terms of which the goods are deliverable to his order."

It will hardly be contended that what the consignor could himself do he could not do by his authorized agent. *Qui facit per alium facit per se.* Consequently, where the goods are deliverable by the bill to the order of the consignor as in this case, the consignor could authorize his agent to receive the goods for him, without surrendering the bill, as long as he is the holder of the bill, and the delivery would be a legal delivery as between him and the carrier, no rights of third party intervening. [Pere Marquette Railroad Co. v. French & Co., supra.]

V. But in such case, would the consignor's authority to his agent to receive the delivery of the goods be required to be in writing, as in effect contended by respondent's learned counsel and ruled by the court below? We think not. We know of nothing in **Parol Authority.** the Act of Congress or other statutes so requiring. The fact that the bill of lading itself is required to be in writing does not require the authority of the agent receiving the property thereunder to be in writing. Where a contract to sell land is required by the statute to be made in writing and signed by the parties or their duly authorized agents, the agent's authority need not be in writing, unless expressly so required by the statute. [Beheret v. Myers, 240 Mo. l. c. 84; Johnson v. Fecht, 185 Mo. l. c. 342; Riley v. Minor, 29 Mo. 439; Johnson v. McGruder, 15 Mo. 365; Tracy v. Berridge, 180 Mo. App. 225.]

VI. Furthermore, after a contract is completely executed by one party the other cannot invoke the Statute of Frauds. [Winters v. Cherry, 78 Mo. **Statute of Frauds.** 344; Self v. Cordell, 45 Mo. 345; Tuggles v. Callison, 143 Mo. 527; McGinnis v. McGinnis, 274 Mo. 297; Maupin v. Railroad, 171 Mo. 187; Blair v.

Jenkins, 129 Mo. 647; Bank v. Read, 131 Mo. 553; Missouri & Illinois Coal Co. v. Willis Coal & Mining Co., 235 Mo. 119.]

So that if the terminal company at Joliet surrendered possession of the corn meal to Eby & Son under verbal authority given them by the plaintiff, the delivery having been completely executed, the Statute of Frauds could not be invoked by plaintiff, even if there was a provision of law requiring the authority of the agent to receive such delivery, to be in writing. We therefore hold that parol evidence, of the authority of Eby & Son from the plaintiff as plaintiff's agent to order the terminal carrier at Joliet to forward said shipments to Lowell and Philadelphia, offered by defendant and excluded by the court, should have been admitted and the court erred in refusing it.

VII.   But respondent's learned counsel strenuously argues that such testimony was made inadmissible by reason of the following provision of the Federal statute (Sec. 8604-g, U. S. Compiled Stats. 1918, 39 U. S. Stats. Large, 540) : "Any alteration, addition or era-

**Alteration.**   sure in a bill after its issue without authority from the carrier issuing the same, either in writing or noted on the bill, shall be void, whatever be the nature and purpose of the change, and the bill shall be enforceable according to its original tenor." Clearly this refers to some change in the wording of the bill by subsequent erasure or writing thereon, and has no application to parol agreements between the consignor and the parties to be notified, by which they are made agents of the consignor of a shipper's order bill to receive the goods from the carrier without the production or surrender of the bill.

VIII.   (a)   It is also true that the mere fact that Eby & Son were required to be notified by the bills of lading themselves, in no way gives them any rights in

Kemper Mill & Elevator Co. v. Hines.

**Notifying Purchaser.** or authority to receive the goods or makes them agents of the consignor for so doing. Under the language of the bills themselves, Eby & Son had no interest in or authority over the goods whatever. [4 R. C. L. sec. 294, p. 842; Bank v. Railroad, 132 Mo. 1. c. 500; 1 Michie on Carriers, p. 560, secs. 865 and 866.]

But the claim is here, not that Eby & Son had any such authority by implication from the bill of lading itself, but that they were specially authorized by plaintiff to receive and re-consign the goods for and on account of the plaintiff as the agents of the plaintiff by the parol testimony under consideration.

(b) Said Act of Congress provides (Sec. 8604-d, U. S. Comp. Stats. 1918, Compact Ed. p. 1374): "The insertion in an order bill of the name of a person to be notified of the arrival of the goods shall not limit the negotiability of the bill or constitute notice to a purchaser thereof of any rights or equities of such person in the goods." But this statute obviously applies only to contests with the purchaser of the bill, and not to contests between the carrier and the shipper while the latter is still the holder and owner and in possession of the bill, as in this case.

(c) It is also true that under said Bills of Lading Act contracts for interstate shipments must be evidenced by a bill of lading, which necessarily implies that such contracts must be in writing. Hence, the provisions of such bills of lading cannot be varied by parol testimony. [U. S. Complied Stats. 1918, Compact Ed. sec. 8604-a; Thee v. Wabash Railroad, 217 S. W. 567; Vittuci Co. v. Canadian Pacific Railroad, 238 Fed. 1005; Inman & Co. v. Seaboard Railroad, 159 Fed. 960; Vanderbilt v. Ocean S. S. Co., 215 Fed. 888; Bark Delaware v. Oregon Iron Co., 14 Wall. 579.]

But the parol testimony here in question in no way adds to or varies the terms of the bill of lading, because, by the terms of the bill under said Act of Congress, as we have seen, the plaintiff being the owner of the goods

and being in possession of the bill of lading, had a right without surrendering the bill, to receive and forward the goods, as was done, by its duly authorized agents, whose authority, we have determined, need not be in writing, but may be shown by parol.

IX.   It is also insisted by learned counsel for respondent that inasmuch as the two cars in question were moved from their point of origin, April 10th and April 16, 1918, respectively, they were transactions prior, in point of time, to the shipment of the other cars referred to in paragraph second of our statement of the rejected testimony, and therefore the testimony that such other cars were forwarded to eastern points the same as the two cars in controversy, by Eby & Son as plaintiff's agents with plaintiff's consent, was inadmissible, as relating to another transaction.   But, according to the offered testimony, said two cars were part and parcel of the same order of 10,000 sacks of meal as said other cars referred to, and plaintiff did not complain of the conversion of the cars in question until July 3, 1918, which was after the other cars had been forwarded under orders from Eby & Son for plaintiff to eastern points and disposed of by plaintiff itself or by Eby & Son as its agent.   We think, therefore, the testimony as to the handling of such other cars, prior to plaintiff's complaint of the conversion herein, was competent and should have been admitted as part of the same transaction as the two cars in question.

*Same Transaction.*

X.   But we think the testimony embraced within the "Third" paragraph of the rejected evidence, namely, that it was the custom for all shipments made to Joliet, Illinois, under shipper's order bills of lading, that the "notify" parties mentioned in the bills as such had authority to authorize the carrier to divert the goods to other points without producing or having the bills of lading and without having special authority from the shippers, was properly rejected.   Proof of such

*Custom.*

custom was not competent. [4 R. C. L. 25, sec. 27; Bank v. Railroad, 132 Mo. 1. c. 500; Great Lakes Co. v. Transp. Company, 238 Fed. 1. c. 481; Hirsch v. Georgia Iron & Coal Co., 169 Fed. 1. c. 581; 1 Michie on Carriers, p. 560, secs. 865 and 866.] Besides, defendant's witness, the traffic manager of the terminal railroad handling such shipments, testified that they were "handled on instructions from either the shipper or consignee"—thus denying they were handled by the "notify party" without special authority from the owner of the goods.

The testimony as to the custom of the "notify" parties to change the destination of the goods was therefore properly excluded.

XI. It was proper to permit the jury to allow the plaintiff in the discretion of the jury six per cent interest per annum on the value of the property from the Interest. time of the conversion. [Arkansas Valley Land & Cattle Co. v. Mann, 130 U. S. 79; Rivinus v. Langford, 75 Fed. 961; Sec. 4222, R. S. 1919; State ex rel. v. Hope, 121 Mo. 34; Goodman v. Railway, 71 Mo. App. 460; Bank v. Railway, 192 Mo. App. 614.]

XII. Appellant also complains as to the admission of certain testimony concerning the value of the meal at the time of its alleged conversion at certain other places than Joliet, but we need not pass on such Value of objection for the reason that the bills of lading Goods. themselves provide that the measure of damages is the value of the meal at the time and place of shipment and not of destination. This provision of the bill is valid and binding on the parties. [Georgia F. & A. Ry. Co. v. Blish Milling Co., 241 U. S. 190; Brockman v. Railway, 195 Mo. App. 1. c. 615.]

XIII. From what has been said it is clear there was a case for the jury and, therefore, defendant's demurrer to the evidence was properly refused. Other errors are complained of by appellant, including errors in giving and refusing instructions, and that the ver-

dict was greater than the amount prayed for in the petition. But we need not consider such further alleged errors, as most, if not all, of them have been disposed of by the conclusions we have already announced, and upon a retrial it is not likely there will be any cause for complaint on account thereof.

The judgment is reversed and the cause remanded for retrial according to the views herein expressed. *Ragland, C.,* concurs; *Brown, C.,* not sitting.

PER CURIAM:—The foregoing opinion by SMALL, C.., is adopted as the opinion of the court. All of the judges concur.