CARTER v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.

Opinion delivered June 24, 1929.

866

W. L. Pope and Tom W. Campbell, for appellant.

E. T. Miller, E. L. Westbrooke, Jr., and E. L. Westbrooke, for appellant.

MEHAFFY, J.   Appellant brought suit in the Lawrence Circuit Court for the value of a carload of flour, alleging in his complaint that on December 12, 1927, he purchased from the Buhler Mill & Elevator Company of Buhler, Kansas, a carload of flour, which was then and there loaded by said company and delivered to said railway company, consigned to the appellant at Walnut Ridge, Arkansas, said railway company then and there delivering to the said mill company a bill of lading for said flour, showing the consignment thereof to appellant, which bill of lading was promptly forwarded to appellant; that, when said flour arrived at Walnut Ridge, said railway company wrongfully delivered it to the Dixie Wholesale Corporation, and wrongfully permitted said wholesale corporation to convert said flour to its own use, to plaintiff's damage in the sum of $1,369.   It asked judgment for this amount, with interest.

Attached to the complaint as Exhibit A was a copy of said bill of lading, with the following caption: "Uniform straight bill of lading prescribed by the Interstate Commerce Commission.   Original—Not negotiable."

The appellee answered, admitting that the carload of flour was delivered to it and duly consigned to appellant; admitted the issuing of the bill of lading covering the same, and admitted that it delivered said car of flour to the Dixie Wholesale Corporation, and alleged as a defense that it so delivered the flour on the oral order of the plaintiff to defendant's agent.

The appellee's witnesses testified that appellant came to the office, asked whether the flour had come, and, when told that it had not, appellant told witness to deliver said flour to the Dixie people when it did arrive, and witness did it. About the time suit was brought, appellant asked witness about it, but had never said a word about it up to that time. Witness was in the employ of the Frisco.

John Poindexer, a clerk in the Frisco office, testified that he remembers Carter coming down and talking about the car of flour; Carter asked if there was a car for him, but did not produce the bill of lading. The car was not there at the time, but it came on the morning of the 17th. Carter told them he was expecting a car of flour, and for them to deliver it to the Dixie Wholesale Corporation when it came. Does not know who signed for the flour, but it was signed, "John Carter, by E. Burrow." He testified that W. P. Burrow was present when Carter had the conversation with witness Ludwig.

Harry Dulaney testified that he saw John Carter at the Frisco depot; that he asked in regard to a car of flour, and the agent told him the flour had not come; Carter replied, "If this flour comes in, will you turn it over to the Dixie people?" Mr. Ludwig said, "Yes."

Ludwig testified again that he was present when the freight delivery receipt was signed, and it was signed by Mr. Burrow's son.. The freight was paid by Mr. Burrow, the manager of the Dixie Wholesale Corporation. Carter did not sign the freight bill, and was not present when it was signed. W. P. Burrow, the manager of the Dixie Wholesale Corporation, was present when Carter told witness to deliver the flour to the Dixie Wholesale Corporation.

John Carter, the appellant, testified that he did not tell the agent or anybody else to deliver the flour to the Dixie Wholesale Corporation; that, when the flour was shipped from Kansas, the bill of lading was sent to him and he received it in due course. He identified the bill of lading covering shipment. The bill of lading was stamped with a rubber stamp: "St. Louis & San Francisco Rail-

road Co., Buhler, Kansas, Dec. 12, 1927.'' Received this bill of lading about December 14. He went to Walnut Ridge to see about it five or six days after he got the bill of lading; when he went the agent was not in; nobody there that morning. Then he went to the Dixie Wholesale Corporation store, and saw they had a fresh shipment of flour; inquired about it, and they admitted they had unloaded his flour. He then went back to see the agent. He then testified that the agent did not claim that appellant had given him any authority to let the Dixie Wholesale Corporation have the flour; that he had just made a mistake. Appellant said that he had not given any such authority as to this car, but had given authority to deliver another car that he had signed up for. Agent Ludwig replied, ''Well, maybe you are right about it, but I was thinking maybe you gave me authority to deliver this one;'' whereupon appellant replied, ''You know I didn't do anything of the kind;'' and agent Ludwig replied, ''Well, that is right, you didn't, and it was that other one I had in mind.''

Appellant was in the brokerage business; was never agent for the Dixie Wholesale Corporation; never had any connection with the company in any way. He is a cousin to Burrow; had no connection with Burrow or his company further than he had with other companies he sold stuff to; had a number of cars before this delivered to the Dixie people. E. Burrow is a son of the manager of the Dixie Company.

Mrs. Cleveland Burrow testified that she heard the conversation that appellant told about between appellant and Mr. Ludwig, and corroborates the statement of appellant. Her husband is a cousin to Carter.

Ludwig was called in rebuttal, and testified about the conversation, but stated that he asked Carter to withdraw the lawsuit, and again testified about Carter directing him to deliver the car to the Dixie Wholesale Corporation.

The plaintiff requested the court to give to the jury the following instruction:

"You are instructed that, if you find that the defendant railroad company delivered the car of flour to one other than the plaintiff, and that such other person did not have possession of the bill of lading issued on the car of flour in question, you will find for the plaintiff."

The court refused to give this instruction, and gave the following instruction:

"Gentlemen of the jury, this is an action brought by John Carter, the plaintiff, against the St. Louis-San Francisco Railway Company, in which the plaintiff, Carter, seeks to recover the sum of $1,369 which he claims is due him on a car of flour shipped to him at Walnut Ridge, Arkansas, and which he alleges was wrongfully delivered by defendant railroad company, or its agent, to another party in Walnut Ridge.

"Now to this complaint the defendant filed its answer, in which it admits that it delivered the car of flour mentioned in the complaint of plaintiff to the Dixie Wholesale Corporation, and that it did so at the direction of the plaintiff, John Carter.

"2. Now, gentlemen, the only question for you to determine is whether or not the plaintiff, John Carter, directed the agent of the defendant, Frisco Railroad Company, here at Walnut Ridge, to deliver this car of flour to the Dixie Wholesale Corporation. The burden is upon the defendant, the Frisco Railroad Company, to show by a preponderance of the evidence, which simply means the greater weight of the evidence, that the plaintiff, John Carter, authorized and directed the agent here of the Frisco Railroad Company to deliver this car of flour to the Dixie Wholesale Corporation."

After giving instruction one and two, the court gave the following instructions, over appellant's objections:

"Now, if you believe from a preponderance of the testimony that the plaintiff, John Carter, authorized and directed the Frisco Railroad Company's agent here in Walnut Ridge to deliver this car of flour to the Dixie Wholesale Corporation, then it would be your duty to find for the defendant railroad company; and, unless you

so believe, you should find for the plaintiff in the amount sued for, which is $1,369, with interest at 6 per cent. from December 12, 1927.

"You are instructed that, if you find that the defendant railroad company delivered the car of flour to one other than the plaintiff, which was John Carter, and that such person did not have possession of the bill of lading issued on the car of flour in question, you will find for the plaintiff; unless you further believe from the evidence that this plaintiff, Carter, authorized and directed the Frisco agent here in Walnut Ridge to deliver it to the Dixie Wholesale Corporation."

The court then gave instruction number 5, requested by appellant, which is as follows:

"If you find that the greater weight of the evidence in this case sustains the plaintiff's contention that he did not authorize the railroad company to deliver the car of flour to the Dixie Wholesale Corporation, or if you find that the evidence is evenly balanced on this question, then in either of such events your verdict should be for the plaintiff. In other words, this is simply an instruction bearing on the preponderance of the testimony.

"No. 6. Now, you are the sole and exclusive judges of the credibility of the witnesses and the weight to be attached to the evidence of witnesses who have testified here before you. In weighing the testimony of these witnesses you should take into consideration their demeanor on the witness stand; their means and opportunities of knowing the facts to which they have testified; the reasonableness or unreasonableness of their statements; the consistency or inconsistency of their statements one with another and with other facts and circumstances proven in the case; their relationship to the parties at interest, if any is shown; their interest in the result of your verdict, if any—weighed under these rules you would be authorized to believe or disbelieve the whole or any part of what any witness has testified to in the case.

"No. 7. Now, if you find for the plaintiff, the form of your verdict will be: 'We, the jury, find for the plain-

tiff in the sum of $1,369, with interest at 6 per cent. from December 17, 1927.' If you find for the defendant, the form of your verdict will be: 'We, the jury, find for the defendant'.''

The jury returned a verdict for the defendant. Before the verdict was returned, however, after argument of counsel and after the jury had retired to consider of their verdict for a time, they returned into court and stated that they had not agreed upon a verdict, but sought the court's information on the following question: "Is it authority for him to notify the agent in person to release the flour and turn it over to another person?"

The court said: ''Well, I think the court covered that in his instructions. The instruction was that the burden is on the defendant to show that the plaintiff, Carter, authorized the agent to deliver these goods and instructed him to deliver them to the Dixie Wholesale Corporation. If he did that, why, you would find for the defendant, and unless you believe that he did, why, you would find for the plaintiff. If that authorization was done either way, in writing or orally, if it was done either way, it would be sufficient.''

One of the jurors then said: ''What we want to know about it is, we do not know how it comes that people can keep the bill of lading without the railroad company being responsible for the flour.''

The court said: ''Well, I think the court covered that with its instructions there. The main instruction on that —if you would like to hear all the instructions, we will have them read to you. These instructions here seem to cover that. 'You are instructed that, if you find that the railroad company delivered the car of flour to one other than the plaintiff, which was John Carter, and that such other person did not have possession of the bill of lading issued on the car of flour in question, you will find for the plaintiff; unless you further find that the plaintiff, John Carter, authorized the defendant railroad company, or its agent, to deliver the flour to the Dixie Wholesale Corporation'.''

The juror then said: "Well, he would have to deliver the bill of lading when he got the flour, wouldn't he?"

The court: "No sir; he wouldn't have to do that. That seems to cover the situation as the court sees it. As the court sees it, gentlemen, it is not a question as to the bill of lading. That simply shows that the car was shipped. The question involved in this case is whether or not the plaintiff authorized the Frisco agent here in Walnut Ridge to deliver this flour to the Dixie Wholesale Corporation. If he did, then, gentlemen, you should find for the defendant. If he didn't authorize it, why you should find for the plaintiff. And the burden is on the defendant railroad company to show by a preponderance or greater weight of the testimony, which means the testimony that is most convincing, that the plaintiff, Carter, authorized them to deliver this flour to the Dixie Wholesale Corporation. It is not material, gentlemen, about the bill of lading and the other papers in connection with it. Now, as I stated, that is simply the only question that is submitted to this jury. I believe, gentlemen, that you ought to be able to agree on that. It is getting late in the day, but I think I will let you try it a while longer."

The jury then returned a verdict for the defendant.

Appellant filed and presented to the court his request for a judgment notwithstanding the verdict, upon the ground that, under the undisputed testimony in the case, plaintiff is entitled to such judgment. This motion was by the court overruled, and exceptions saved.

Appellant then filed a motion for a new trial, which was overruled, exceptions saved, and this appeal duly prosecuted to this court.

Appellant contends that the shipment of the flour involved in this case was an interstate shipment, and is therefore governed by the Federal Bills of Lading Act of 1916, and in this appellant is correct. It is true, as stated by appellant also, that the almost universal rule is to require the production of the bill of lading before making a delivery. The carrier has, of course, a right to require this, and if it delivers goods without the production of

the bill of lading, it does so at its peril. Even a direction in the bill of lading to notify another person does not authorize the carrier to deliver the goods to such person without the surrender of the bill of lading.

Appellant relies on a statement of the rule quoted by him from 4 R. C. L. 840. It is also true that a carrier will be justified in delivering the property to the true owner, whether he has the bill of lading or not, and without the surrender of the bill of lading, because the right of the true owner of the property is paramount to the claim of all others, no matter what may be their relations to each other.

"When a common carrier deliver goods to one other than the consignee, however, he does so at his peril, and it devolves on him to prove that he has delivered them to the real owner. Consequently it is held to be only just and reasonable that the carrier, when a demand is made on him for the goods by a person other than his bailor or consignee, should be allowed to hold the goods for a sufficient time to investigate in good faith and to satisfy his honest doubts as to their ownership before delivery, without making himself liable in conversion." 4 R. C. L. 843.

In the instant case the owner himself, according to the testimony of appellee, directed the carrier to deliver to the Dixie Wholesale Corporation. As to whether he did direct the carrier to deliver to this company was a question of fact.

"The general rule holding the carrier liable for a delivery of goods to the wrong person does not apply where the delivery is due to the negligence of the consignor. This is true, for instance, where the delivery to the wrong person is due to the fact that the goods are not clearly marked. * * * Also, of course, a delivery of goods by a carrier to the wrong person may be ratified by the consignor, and in such a case the carrier is relieved from liability." 4 R. C. L. 846.

Although the carrier might have the right to require the bill of lading, and although it would be liable if it

delivered to the wrong person without the bill of lading, this action on its part could be ratified, and of course, if it could be ratified, it could be authorized by the true owner. It is not always necessary that a consignment be delivered to the party to whom it is addressed in person. It may be lawfully delivered to an agent, clerk or employee, duly authorized by him to receive the same. 4 R. C. L. 839. .

Certainly, if he could direct one person or authorize one person to receive the goods, he could authorize another, and the appellant had the right to authorize the carrier to deliver the goods to the Dixie Wholesale Corporation. And if he did this, and the carrier complied with this direction of the owner and delivered to the Dixie Wholesale Corporation, it would certainly not be liable to the owner, who had given such directions. One cannot authorize a thing to be done and then recover damages because it is done. Delivery to the agent of the consignee, or any other person entitled to the goods, who has been authorized to receive the goods, will relieve the carriers from further liability. If the person to whom the goods are delivered is the agent authorized to receive them, the delivery will be sufficient.

"And when the carrier is sued for misdelivery, it must show that the agent was authorized to receive the goods, or at least that he had been clothed with such apparent authority as to justify it in presuming his authority; but no greater degree of proof of authority in the person to whom they were delivered is required than for any other issue in a civil case." 10 C. J. 261.

"Consequently, where the goods are deliverable by the bill to the order of the consignee, as in this case, the consignor could authorize his agent to receive the goods for him without surrendering the bill, as long as he is the holder of the bill. And the delivery would be a legal delivery as between him and the carrier, no rights of a third person intervening." *Pere Marquette Ry. Co.* v. *French Co.,* 254 U. S. 564, 41 S. Ct. 195.

875

While the bill of lading must be in writing, the order directing the agent to receive the goods is not required to be in writing. *Kempner Mill & Elevator Co.* v. *Hines,* 293 Mo. 88, 239 S. W. 803.

The only question in this case is whether the consignee, the owner of the goods, could lawfully order the carrier to deliver to another person orally, and we hold that he can lawfully do this. It makes no difference whether the person to whom he orders the carrier to deliver the goods is his agent or whether he has sold the goods to this person; in either event, if the consignee directs the carrier to deliver to another person and the carrier does deliver to such person, it is not liable to the consignee who made the order.

The testimony in this case is conflicting, and it was therefore a question of fact for the jury, if there is any substantial evidence to support it. There can be no dispute about there being substantial evidence to support the verdict, and the judgment is therefore affirmed.